CHALMERS CHEMICAL CO. v. CHADELOID CHEMICAL CO

(Circuit Court, S. D. West Virginia.   December 6, 1909.)

No. 399.

1. REMOVAL OF CAUSES (§ 19*)—GROUNDS—LAWS OF THE UNITED STATES.

A suit in equity to cancel certain agreements regulating the price of paint and varnish removers, manufactured and sold under patents issued to defendant, on the ground that such agreements were in violation of the Sherman anti-trust law (Act July 2, 1892, c. 647, § 1, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200]), was a suit directly involving the construction of a law of the United States, and was therefore removable to the federal courts, regardless of the citizenship of the parties.

[Ed. Note.—For other cases, see Removal of Causes, Dec. Dig. § 19.*]

2. CANCELLATION OF INSTRUMENTS (§ 13*)—ILLEGAL CONTRACT—DEFENSE—ADEQUATE REMEDY AT LAW.

Where complainant, under a mistake of law, was induced to enter into a contract fixing the price of a patented article manufactured under licenses, alleged to be a violation of the Sherman anti-trust law (Act July 2, 1892, c. 647, § 1, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200]), and defendant sought to hold complainant thereto, complainant was entitled to sue in equity for cancellation of the contract, though he could plead its illegality as a defense to an attempt by defendant to enforce it as to him, as such defense would not relieve him from the pains and penalties provided by the Sherman act.

[Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. § 13; Dec. Dig. § 13.*]

3. REMOVAL OF CAUSES (§ 25*)—GROUND—LAWS OF THE UNITED STATES—GROUNDS OF RELIEF.

Where a case was made by the pleadings in a suit for the cancellation of a contract involving the construction and application of the Sherman anti-trust act (Act July 2, 1892, c. 647, § 1, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200]), the suit was removable to the federal courts, without reference to other grounds for relief pleaded.

[Ed. Note.—For other cases, see Removal of Causes, Dec. Dig. § 25.*]

In Equity.   Suit by the Chalmers Chemical Company against the Chadeloid Chemical Company.   On plea to the jurisdiction and motion to remand.   Denied.

Edward S. Beach, for complainant.
Frederick S. Duncan, for defendant.

KELLER, District Judge.   This is a suit in equity, brought by the complainant, a corporation, chartered under the laws of the state of West Virginia, against the defendant, also a corporation chartered under the laws of the same state, and the litigation was orginally brought in the circuit court of Kanawha county, W. Va.   In due time the defendant filed a petition for the removal of this cause to the Circuit Court of the United States, and lodged a copy of the record in the clerk's office of said court.

The complainant has now filed a plea in abatement, challenging the jurisdiction of the Circuit Court of the United States, and has also moved that court to remand the cause to the circuit court of Kanawha county.   The plea and motion are predicated upon the ground that this court has no jurisdiction of the cause of action made in the bill,

and that, contrary to the allegations contained in the petition for removal, the suit does not really and substantially involve a controversy "arising under the statutes of the United States."

In considering this plea and motion I may say at the outset that it does not and cannot involve any consideration of the merits of the litigation, and must be decided solely upon the allegations concerning the cause of action appearing in the bill itself, and in the petition filed for the removal of the case, and it appears from the allegations of the bill and exhibits that the defendant corporation, the Chadeloid Chemical Company, is the owner of various United States letters patent concerning paint and varnish removers, and particularly of United States letters patent No. 714,880, for paint and varnish removers, granted Carleton Ellis; that on February 27, 1905, the defendant granted a license under said patent to the complainant to manufacture and sell varnish removers under said patent, and under all United States letters patent which the defendant then owned or might thereafter acquire, which said license was unrestricted as to selling price.

It further appears from the bill that in August, 1906, after litigation, the validity and scope of said letters patent No. 714,880 were successfully established by a decree pronounced by the Circuit Court of the United States for the Southern District of New York, and that in October following said decree the defendant granted to a large number of manufacturers doing business in various parts of the United States, including the complainant, licenses under said patent, containing provision that the remover made under such licenses should not be sold at less than a certain minimum price, set forth therein. The license granted to the complainant at this time was different from those granted to other manufacturers, in that it was a free or non-royalty bearing license, but obligated the complainant to observe the price agreement in the same manner that it obligated the other licensees.

The bill avers that the complainant entered into this license under a misapprehension and mistake of law, and avers that said license agreement of October 15, 1906, referred to in the bill as the "first price agreement," "is invalid because ultra vires, in unlawful restraint of trade and contrary to the laws of West Virginia, other states, and of the United States," etc. The bill then sets forth that in January, 1907, the defendant entered into similar license agreements with the complainant and its other licensees, modifying the licenses dated in October, 1906, as to prices, and in some other respects, and granting licenses under additional patents. These agreements contained clauses requiring the licensees, in selling remover made under the license, to maintain certain minimum prices. In the bill this second modification is referred to as the "second price agreement."

The bill alleges that the license agreements granted in October, 1906, and January, 1907, were the result of a combination of manufacturers, including the complainant, and constituted "an agreement to enhance and fix minimum prices," and as to both of these license agreements avers that they are "in unlawful restraint of trade and contrary to the laws of * * * the United States." The bill also sets forth other alleged grounds of the invalidity of these agreements

and other reasons why they should be canceled, which is the prayer of the bill. Copies of these agreements are attached to the bill of complaint.

The petition for removal averred that the defendant's license system, as set forth in the pleadings, is of great value to the defendant, bringing in royalties in excess of $25,000 per year, and that the annulment of the license agreements of October, 1906, and January, 1907, would destroy the system, and that the right to maintain these licenses as valid agreements under patents owned by the defendant is of a sum or value, exclusive of interest and costs, in excess of $2,000.

The bill plainly avers that these agreements are invalid, among other reasons, because contrary to the laws of the United States. The only law of the United States bearing on such matters is the so-called "Sherman Act," being Act July 2, 1892, c. 647, 26 Stat. 209 (U. S. Comp. St. 1901, p. 3200). Section 1 of that act reads in part as follows:

"Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states, or with foreign nations, is hereby declared to be illegal. Every person who shall make any such contract or engage in any such combination or conspiracy, shall be deemed guilty of a misdemeanor."

It would, therefore, appear upon the face of the bill that at least one of the grounds upon which it is sought to cancel the license agreements of 1906 and 1907 is that the same are obnoxious to the provisions of the Sherman act; and this involves directly the construction of a law of the United States. It is because the statutes of the United States, according to the allegations of the bill, declare a contract in restraint of trade to be illegal, that the allegation is made that these contracts are "contrary to the laws of * * * the United States," and that the bill of complaint seeks the relief prayed for. It appears, therefore, that the correct decision of this case, according to the statements in the bill of complaint, will depend upon the construction of the statutes of the United States, and the application thereof to the agreements in question and to the general license system of the defendant thereby created.

It is to be remembered that the complainant alleges in its bill of complaint that it entered into these agreements under a misapprehension of law, and, as I conceive its allegations, they amount to the declaration that, having now ascertained that it is a party to an agreement in unlawful restraint of trade, it desires the court to abrogate and legally cancel the said unlawful agreement in so far as the complainant is a party thereto. There can be no doubt in my mind that a complainant, so situated, would have a right to ask a court of equity of competent jurisdiction to cancel and abrogate such an agreement entered into by the complainant under a mistake of law, and to which the other party to the agreement sought to hold him. It may be true that he could refuse to be bound by this agreement, and plead its illegality as a defense to an attempt by the other party to enforce it as to him; but I do not think that that fact would prevent him from applying to a court of equity for relief from a situation which, if he did not become the actor, might subject him to the pains and penalties provided by

the Sherman act. Be this as it may, it does appear from the bill that the complainant is relying in equity upon the provisions of the Sherman act as ground for the cancellation of these contracts. The fact that the bill sets up other grounds for the cancellation of these agreements does not defeat the jurisdiction of the United States court, where one of the grounds is dependent upon the construction given to the Constitution or to a statute of the United States.

In New Orleans, M. & T. R. R. Co. v. Mississippi, 102 U. S. 141, 26 L. Ed. 98, it is decided that a suit brought by a state in one of its own courts against a corporation of its own creation can be removed to the Circuit Court of the United States, if it is a suit arising under the Constitution or laws of the United States, although it may involve questions other than those which depend upon the Constitution and such laws. To the same effect is the case of Ames v. Kansas, 111 U. S. 449, 4 Sup. Ct. 437, 28 L. Ed. 482; and in Starin v. N. Y., 115 U. S. 257, 6 Sup. Ct. 28, 29 L. Ed. 388, it was stated, as the effect of all the authorities on the subject, that if, from the questions involved in a suit, "it appears that some title, right, privilege, or immunity on which the recovery depends will be defeated by one construction of the Constitution of a law of the United States, or sustained by the opposite construction, the case will be one arising under the Constitution or laws of the United States, within the meaning of that term as used in the act of 1875; otherwise not."

Many cases might be cited from the inferior federal courts and the text-writers to the effect that if the case as made upon the pleadings involves the construction of the Constitution of the United States, or a law thereof, the case will be removable, no matter how many other grounds for relief are set forth in the bill of complaint.

The motion to remand will be denied.