COREY et al. v. INDEPENDENT ICE CO. et al.

(District Court, D. Massachusetts. August 4, 1913.)

No. 324.

1. MONOPOLIES (§ 28*)—ANTI-TRUST ACT—ACTION FOR VIOLATION—SUIT BY STOCKHOLDERS.

Minority stockholders cannot maintain a suit in equity under Sherman Anti-Trust Act July 2, 1890, c. 647, § 7, 26 Stat. 210 (U. S. Comp. St. 1901, p. 3202), to recover threefold damages in the right of the corporation for a violation of the act.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 18; Dec. Dig. § 28.*]

2. MONOPOLIES (§ 28*)—ACTION FOR DAMAGE—PLEADING—"INTERSTATE COMMERCE."

Allegations that an ice company is engaged in cutting and harvesting ice in New Hampshire and transporting the same to Boston and selling it in Boston are not sufficient to show that the corporation is engaged in interstate commerce.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 18; Dec. Dig. § 28.*]

3. PLEADING (§ 8*)—FACTS OR CONCLUSIONS.

General allegations in a pleading that defendants entered into a combination and conspiracy in restraint of interstate commerce in violation of Anti-Trust Act July 2, 1890, c. 647, 26 Stat. 209 (U. S. Comp. St. 1901, p. 3200), held insufficient as pleading conclusions.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 12–28½; Dec. Dig. § 8.*]

In Equity. Suit by James R. Corey and others against the Independent Ice Company and others. On demurrer to bill. Demurrer sustained.

Whipple, Sears & Ogden, of Boston, Mass., for complainants.

Stone & Stone and Boyd B. Jones, all of Boston, Mass., for defendants.

DODGE, Circuit Judge. The plaintiffs hold a minority of the voting stock of the Independent Ice Company, the first-named defendant in their bill. According to their allegations, this corporation has a claim for damages under section 7 of the Anti-Trust Act (Act July 2, 1890, c. 647, 26 Stats. 209 [U. S. Comp. St. 1901, p. 3202]) against the other defendants named, who are Boston Ice Company, a Massachusetts corporation, Frank J. Bartlett, now its president, formerly its treasurer, American Ice Company, a New Jersey corporation, Wesley H. Oler, its president, George A. Taylor, treasurer and director of the defendant Independent Ice Company, who holds in trust the majority of that company's voting stock.

After setting forth acts of the other defendants from which the above claim for damages is alleged to have arisen in the Independent Company's favor, the bill alleges a demand, made by the plaintiffs as stockholders in that company, upon its president and directors for the institution of a suit in its name, under section 7 of the Anti-Trust Act, against the Boston Ice Company for the damage claim

alleged to exist and the failure or refusal of those directors to bring such suit. The relief prayed for is: (1) An account of the damages sustained by the Independent Company and a decree for three times the amount thereof, with costs and attorney's fee, to be paid either by the other defendants to said company or a part of said damages, in proportion to the stock owned by them, to be paid by the defendants to the plaintiffs; (2) in the alternative, the appointment of a receiver to sue for and collect such damages; (3) for other and further relief, etc.

According to the bill, the plaintiffs are Massachusetts citizens and so also are the defendants, the Boston Ice Company, George A. Taylor, the Independent Company's treasurer, and Frank J. Bartlett, the American Company's president. The bill discloses no matter in controversy, therefore, between citizens of different states and is maintainable in this court, if at all, only because it presents a matter in controversy arising under the federal statute referred to.

. The bill does not ask for any preventive relief, such as it would be within the general equity jurisdiction of the court to afford, against injury resulting or to result from an unlawful combination. Of such a suit the court might have jurisdiction independently of diverse citizenship because a federal question was involved. Chalmers, etc., Co. v. Chadeloid & Co. (C. C.) 175 Fed. 995. On the contrary, as the plaintiffs expressly state in their brief, the suit is one "to enforce a remedy provided by the act itself; that is, a judgment for threefold damages and costs." The defendants raise the objections that the court has no jurisdiction to entertain the bill or grant the relief for which it prays, and that it has no jurisdiction to entertain any suit in equity under the act wherein any person other than the United States, by its Attorney General, is the plaintiff. These objections are first to be considered.

[1] As the plaintiffs concede, it is settled that a stockholder cannot maintain a suit at law authorized by section 7 of the act for injury to the business of his corporation whereby the value of his stock is impaired. The right of action created by this section is in the corporation alone, representing all its stockholders. Ames v. American, etc., Co., 166 Fed. 820 (C. C. Mass. 1909); Loeb v. Eastman, etc., Co., 183 Fed. 704, 106 C. C. A. 142 (C. C. A. 3d Circ. 1910). They are therefore obliged to contend that the act permits minority stockholders to accomplish through a bill in equity what they could not accomplish by a suit at law under section 7, jurisdiction whereof, as that section expressly provides, might be had in any district where the defendants could be found, irrespective of diverse citizenship or amount.

. The Anti-Trust Act contains express provisions determining the . remedies whereby and the courts wherein its provisions are to be enforced, instead of leaving them to be ascertained according to the general statutory provisions governing such matters. Section 7, regulating suits at law, has been referred to. Section 4 invests the federal courts with jurisdiction "to prevent and restrain violations of this act," but goes no further in expressly giving them jurisdiction in

equity, and by the same section it is made the duty of the law officers of the government to institute the equity proceedings authorized.

In view of these express provisions, the Court of Appeals for the Fifth Circuit has held, in Gulf, etc., Co. v. Miami, etc., Co., 86 Fed. 407, 420, 421, 30 C. C. A. 142 (1898), that suits in equity or injunction suits by other than the government of the United States are not authorized by the act. And the Court of Appeals for the Second Circuit has later held, in National, etc., Co. v. Mason, Builders, etc., 169 Fed. 259, 263, 94 C. C. A. 535, 26 L. R. A. (N. S.) 148 (1909), that the injunctive remedy is available to the government only, and the individual can only sue for threefold damages. These are the only Court of Appeals decisions found regarding suits in equity under the act. The greater part of the decisions in the lower federal courts have been to the same effect. See Blindell v. Hagan (C. C.) 54 Fed. 40 (1893); Pidcock v. Harrington (C. C.) 64 Fed. 821 (1894); Greer v. Stoller (C. C.) 77 Fed. 2 (1896); Southern, etc., Co. v. United States, etc., Co. (C. C.) 88 Fed. 659, 663 (1898); Block v. Standard, etc., Co. (C. C.) 95 Fed. 978 (1899); Metcalf v. American, etc., Co. (C. C.) 108 Fed. 909 (1901), and (C. C.) 122 Fed. 115, 126 (1903). In the last-cited case, as in this, the bill was brought by a minority of stockholders and it sought not only to have a transfer of the corporation's property set aside as void under the act but also treble damages according to section 7. A view contrary to the above has been taken in Bigelow v. Calumet, etc., Co. (C. C.) 155 Fed. 869, 876 (1907), and Mannington v. Hocking, etc., Co. (C. C.) 183 Fed. 133, 140 (1910). In the first of these two cases, at least, there was diverse citizenship of the parties. I think the right construction of the act is that adopted by the two Court of Appeals decisions above cited. If, as there held, authority to sue for relief by injunction against violation of its provisions has been given by the act to the government alone, I am unable to believe that authority to sue in equity for other relief has been given by it to private parties. The plaintiffs urge that since they cannot get the damages they claim at law except through the corporation, they are without remedy unless a stockholder's bill can be maintained. But neither they nor their corporation could claim any right whatever to such damages except so far as the act has expressly given such a right, and the express provisions of the act are not of a character such as permits extending them by implication.

[2] If the above conclusion is right, the bill cannot be maintained. If not, the objections next to be considered are that the allegations of the bill fail to show the defendants to have done anything which the Anti-Trust Act declares illegal or makes a misdemeanor.

The trade or commerce which the bill charges them with combining to restrain or monopolize is described in paragraph 2. The allegations are: As to the Independent Company, that it has been engaged since its organization in 1895—

"in the business of cutting and harvesting ice, principally in the state of New Hampshire, transporting the said ice to the city of Boston in the state of Massachusetts, and there selling the same; the larger part of said ice being delivered in said Boston, but some being shipped to places outside the state.

Said defendant Independent Ice Company has thus continuously since the date of its organization been engaged in interstate commerce in ice."

As to the Boston Ice Company, the allegations are that since its organization (the date whereof is not alleged) it has been engaged—

"in the business of cutting and harvesting ice throughout the New England states, transporting the said ice to said Boston, and there selling the same. Said defendant Boston Ice Company has thus been continuously engaged in interstate commerce in ice."

The last clause in each of the two above quotations is of no effect unless the preceding allegations have made it distinctly appear that the business described was "trade or commerce among the several states." Nor, unless this is the case, do any of the later references in the bill to the business here described as interstate trade and commerce assist to bring it under that description. If the bill has charged any combination, monopoly, or attempt to monopolize obnoxious to the statute, it is only with regard to "the trade and commerce in ice between the city of Boston and the various New England states" or "the trade and commerce in ice in said territory." See paragraph 4. What is referred to by the language quoted must be taken as meaning nothing other than the trade or commerce in ice described as above in paragraph 2. The defendants contend that in paragraph 2 no trade and commerce in ice between Boston and the various New England states is described, nor any interstate trade or commerce whatever.

In this contention I think the defendants are right. The Boston Ice Company might well be engaged in cutting and harvesting ice in every New England state, transporting it to Boston, and selling it in Boston, without being engaged in interstate commerce at all. The natural import of the allegations is, not only that the ice remained the property of the Boston Ice Company from the time it was cut until they had sold it in Boston, but also that the Boston Company itself carried it to Boston after cutting and harvesting it. No combination to restrict or monopolize the transportation of ice between New England points and Boston is anywhere charged in the bill. And if the Boston Company shipped its ice, by a carrier, from such points outside of Massachusetts to itself at Boston, its subsequent sales thereof in Boston would not necessarily be transactions in interstate commerce. Banker, etc., v. Penna., 222 U. S. 210, 32 Sup. Ct. 38, 56 L. Ed. 168; Purity, etc., Co. v. Lynch, 226 U. S. 192, 33 Sup. Ct. 44, 57 L. Ed. 184. The plaintiffs rely upon Addyston, etc., Co. v. United States, 175 U. S. 211, 20 Sup. Ct. 96, 44 L. Ed. 136; Montague & Co. v. Lowry, 193 U. S. 38, 24 Sup. Ct. 307, 48 L. Ed. 608; Swift & Co. v. United States, 196 U. S. 375, 25 Sup. Ct. 276, 49 L. Ed. 518. But their allegations do not make it possible to say, as in the first case, that the Boston Company was engaged in selling and shipping the commodity manufactured by it into other states under contracts for its manufacture and sale with citizens of such other states, nor that it was engaged, as in the second case, in selling a commodity in one state procured by it from manufacturers in other states, nor that it was engaged, as in the third case, in selling its commodity in one state to dealers and consumers in others, thereafter shipping it in pursuance of such sales.

I am unable therefore to hold, on the allegations made, that the Boston Ice Company is shown to have been engaged in interstate commerce in ice. The allegations describing the Independent Company's business are the same with two additions only, not made as to the Boston Company. The first is that the Independent Company cut and harvested its ice principally in New Hampshire; the second is that, having transported its ice to Boston and there sold it, the larger part of it was delivered in Boston, but some was shipped to places outside the state. I see nothing in either of these allegations to justify a conclusion different from that arrived at regarding the allegations about the Boston Company. It is not alleged that it was the Independent Company by whom its ice was shipped to places outside the state, or that, if so, the ice was shipped to purchasers outside the state. The plaintiff has no right to expect the court to supply either of these things by inference.

[3] If the above conclusions are wrong, the objections next to be considered are that no combination or conspiracy to restrain the trade described and no monopolization thereof or attempt to monopolize it are sufficiently alleged in the bill.

The plaintiff has not, as was done in Swift v. United States, 196 U. S. 375, 25 Sup. Ct. 276, 49 L. Ed. 518, Loewe v. Lawlor, 208 U. S. 274, 28 Sup. Ct. 301, 52 L. Ed. 488, 13 Ann. Cas. 815, upon which he relies, alleged a combination or conspiracy by the defendants to do certain specified acts, with a description of the intended acts sufficient for a determination by the court whether or not a combination or conspiracy to do such acts would or not be a combination or conspiracy to restrain or monopolize the trade or commerce which the act protects. He has, on the contrary, begun by alleging a "combination and conspiracy," which he describes as in restraint of the trade and commerce in ice in New England, entered into by the defendants after they had formed the "plan and purpose of monopolizing" such trade and commerce, and the subsequent co-operation of the defendants to carry out such plan and purpose and continue such combination and conspiracy. This is followed by allegations of subsequent acts done by the defendants, or some of them, "in pursuance of said plan and purpose and in continuation of said combination and conspiracy," and by allegations as to some of these acts that competition has been thereby prevented or destroyed, or a "monopoly," which the Boston Ice Company is assumed rather than alleged to have obtained, thereby protected, perfected, fostered, or sustained. That the acts thus characterized were the acts or among the acts contemplated by the "combination or conspiracy" as formed is left to inference; the direct allegations describing this "combination or conspiracy" not going beyond the statutory language. Conceding that the bill is not to be construed like an indictment, and without reference, therefore, to any of the decisions which have dealt with indictments under the act, and conceding, further, that "combination," "conspiracy," and "monopolizing or attempting to monopolize" need not necessarily be alleged separately and distinctly from each other, but may be indiscriminately charged, as here (Cilley v. United, etc., Co. [D. C.] 202 Fed. 598; Strout v. United Shoe Mach. Co. [D. C.] 202 Fed. 602), I am still unable to

believe that facts constituting an offense or offenses under the act have been alleged with such definiteness and certainty as makes it fair and just to require the defendants to answer the allegations.

It is true that with regard to one of the acts alleged to have been done as above, viz., the obtaining control of the management of the Independent Company by the Boston Company, in 1904, by acquisition of the beneficial interest in a majority of the Independent Company's stock, the bill avers (paragraph 5) "that said acquisition of control was in itself a contract and combination in restraint of trade and commerce in ice between * * * Boston and the various New England States," and also "an attempt to monopolize the trade and commerce in ice in said territory." But without allegations that there were no other competitors, or of the proportion of the trade and commerce referred to controlled by the two companies before 1904, I am obliged to regard the quoted averments as mere conclusions of law unsupported by any facts alleged.

The defendants object further that no injuries to the Independent Company's business or property are sufficiently alleged. In what the bill sets forth relating to injuries for which damages are claimed, the proportion of definite facts to general and indefinite charges of conduct of a kind which might tend to the Independent Company's injury in its business or property is indeed small; but, were this the only valid objection to the bill, I am not satisfied that it ought to be sustained. It seems to me, on the whole, sufficiently alleged at least that in 1906 the control by the Boston Company was so exercised as to cause acceptance by the Independent Company of a price for certain ice less than its market value and less than the Boston Company, to which it had been sold and delivered, had agreed to pay; also that the same control was so exercised in 1909 as to prevent any sale of certain ice which, but for such exercise of control, might have been profitably sold. I cannot say that these allegations do not describe an injury to the Independent Company's business or property.

Lastly the defendants object that the bill does not contain allegations meeting the requirements of equity rule 94 (rule 27 of the rules of 1912 [198 Fed. xxv, 115 C. C. A. xxv]) with regard to stockholders' bills. A letter dated July 20, 1910, is set forth, alleged to have been sent by the plaintiffs to the president and directors of the Independent Company. In one place it asks for the bringing of suits under the act against all the present defendants except Bartlett and Taylor, in another for the bringing of such a suit as is now brought against the Boston Company alone. A refusal by the directors to bring such suits is alleged, under date of September 7, 1910. The present bill was filed March 8, 1912. There are no allegations that the same president and directors continued in office from July, 1910, to March, 1912. No effort to obtain action by the stockholders independently of the directors is alleged, but it is alleged that further efforts to obtain action by either directors or shareholders would be "manifestly useless." In view of Delaware, etc., Co. v. Albany, etc., Co., 213 U. S. 435, 29 Sup. Ct. 540, 53 L. Ed. 862, and of the relations disclosed in the bill between the plaintiffs and the directors and other stockholders of the Independent Company, I should be unable to sustain

this objection by itself, however much is left to be desired by those allegations of the bill which are intended to meet rule 94 (27).

I am obliged however, for the other reasons stated, to sustain the demurrer.

Demurrer sustained.