JOHN B. ALLEN, JUNIOR, administrator, & another, *vs.* TOWN
OF PLYMOUTH & another.

Plymouth.    November 12, 1942. — March 4, 1943.

Present: FIELD, C.J., DONAHUE, QUA, COX, & RONAN, JJ.

*Fraud.    Mistake.    Bond,* Validity, Old age assistance bond.    *Mortgage,*
Of real estate: validity.    *Old Age Assistance.    Public Welfare.*

A suit by the administrator of the estate of a recipient of old age assistance
against a town for cancellation of a bond and mortgage given by the
recipient for repayment of the amount of the assistance could not be
maintained on the ground that he had been entitled to assistance
without giving the bond and mortgage and that they had been "re-
quired" of him by fraud or mistake at the time of his application for
assistance, where, so far as appeared, he executed them without .ob-
jection or thought of claiming an appeal to the appeal board and it did
not appear that he was mistaken as to his rights respecting assistance.

BILL IN EQUITY, filed in the Superior Court on November
5, 1941, by the administrator of the estate of George M.
Schroeder and the administrator with the will annexed of
the estate of Sarah F. Schroeder seeking, among other
things, cancellation and discharge of the bond and mortgage
described in the opinion.

The defendants appealed from a final decree entered by
order of *Swift, J.*

The case was submitted on briefs.

*A. P. Richards,* for the defendants.

*E. J. Campbell,* for the plaintiffs.

Cox, J.    George M. Schroeder and his wife made applica-
tion on December 2, 1938, to the bureau of old age assistance
of the defendant town, where they lived, for old age assist-
ance, to which they were entitled under G. L. (Ter. Ed.)
c. 118A, as then in force.    See St. 1936, c. 436, § 1; St. 1937,
c. 440; St. 1938, c. 274, c. 285, c. 408, c. 467.    At that time
they had no property with the exception of their interests
in the real estate upon which they resided, consisting of two
parcels standing in their names as tenants in common, and

one parcel standing in Schroeder's name. The first two parcels were, at the time the applications were filed, and had been for five years immediately preceding, assessed for $3,875, and the other parcel for $25. Old age assistance was granted, and a bond and mortgage of the real estate were required of the Schroeders.

Schroeder died on June 20, 1939, and his wife, on October 6, 1940, both having been paid, from the date of their applications, old age assistance amounting to something over $900. They had no children. The plaintiff is the administrator of Schroeder's estate and administrator with the will annexed of his wife's estate.

Demand was made on the plaintiff for the payment of $900 and the defendants threatened to foreclose the mortgage that had been given, which recites that it is "to secure the payment of aid and assistance rendered" to the Schroeders, or either of them, by the town, as provided in their bond of even date. The bond states no penal sum, but recites that the Schroeders are bound to the town treasurer "for aid and assistance rendered to . . . [them], or either of . . . [them], by said town, to be paid to . . . [the town] treasurer, or his successors in office; to the true payment whereof, . . . [they], jointly and severally, bind . . . [themselves, their] heirs, executors, and administrators." The condition of the bond is that if the Schroeders shall "repay or cause to be repaid to the . . . treasurer . . . such sums advanced at any time by any duly authorized officer of . . . [the town], to . . . [them], or either of . . . [them], or any sums of money expended by such officer for the assistance or benefit of . . . [them], or either of . . . [them], under the provisions of . . . Chapter 118A, as amended by . . . [St.] 1936, Chapter 436, and any amendments thereto; then this obligation to be void, otherwise to remain in full force and effect."

The suit was heard on a statement of agreed facts, and the defendants appealed from the final decree, which, in effect, stated that the plaintiff, as administrator of Schroeder's estate, was not indebted to the town, but that, as administrator of Mrs. Schroeder's estate, he was indebted to the

town in the sum of $481.90, and provided that, upon pay-
ment by the plaintiff of this sum to the town treasurer, he
should execute and deliver to the plaintiff in his adminis-
trative capacity a discharge of the mortgage, that the bond
that had been given likewise should be discharged and
cancelled upon the payment of said sum, and that in all
other respects the bill should be dismissed. The plaintiff
did not appeal. See *Royal Indemnity Co.* v. *Perry,* 296
Mass. 149, 153, and cases cited.

The amendment of § 4 of the old age assistance law (St.
1936, c. 436, § 1), by St. 1938, c. 467, merely changed the
amount of equity, computed on the basis of assessed valua-
tion of an applicant's real estate, from $2,000 to $3,000.
This fact will be kept in mind when reference is made here-
inafter to the old age assistance law in force and effect when
the applications for assistance were made in the case at bar.
This law provided, in § 4, that the ownership of an equity
in real estate upon which an applicant resided should not
disqualify him from receiving assistance, provided that if
such equity, computed on the basis of assessed valuation,
exceeded $3,000 in each of the five years immediately pre-
ceding his application, the board or bureau of the town
rendering such assistance should, through the appropriate
town official, require such applicant to execute a bond "in
a penal sum at least equal to the amount of the equity in
excess of three thousand dollars," running to the treasurer
of the town, conditioned on repayment to such town of "all
amounts of such assistance, without interest, such bond to
be secured by mortgage of the applicant's real estate."
(See, now, St. 1941, c. 729, § 4.) See *Worcester* v. *Quinn,*
304 Mass. 276; *Hinckley* v. *Barnstable,* 311 Mass. 600. The
law, by § 10, gave the department of public welfare power
to make such rules relative "to notice and reimbursement,
and such other rules relating to the administration of . . .
[it], as it deems necessary." Rule 5 of the department, in
effect on the date of the applications for assistance in the
case at bar, is set out in the statement of agreed facts as
follows: "The intent of the law is to permit the retention
of the home of the beneficiary. An applicant may retain

ownership of an equity in vacant land from which no income is derived or in real estate upon which he actually resides, and provided the applicant agrees to sign the mortgage bond approved by the department, if the equity, computed on the basis of the assessed valuation, exceeds three thousand dollars in each of the five years immediately preceding his application, as required by section 4 of the law. In cases of joint ownership of the home by husband and wife, the total amount of equity must not exceed $3000."

The law, by § 3, provided, among other things, that any person aggrieved by the failure of a town to render adequate assistance, or by the failure of the board of a town to approve or reject an application for assistance within thirty days after receiving such application, should have a right of appeal to a board designated in the act, called the appeal board, which should forthwith make a thorough investigation with authority to act upon any appeal in relation to the matter of denial of assistance by a local board, the matter of a change in the amount of assistance given, and the matter of withdrawal of assistance. In all cases of appeal an opportunity for a "fair hearing" by the appeal board was required, and its decisions, which had to be rendered not later than sixty days after claim of appeal was filed, were to be binding upon the local board involved and had to be complied with by it. St. 1936, c. 436, § 1. St. 1937, c. 440, § 3. St. 1938, c. 285.

The parties, in the main, have addressed their arguments to the question of the construction of said § 4 and the force and effect of said rule 5 of the department of public welfare. One question presented by the defendants, in effect, is whether the Schroeders were entitled to receive old age assistance without giving the bond and mortgage. We are of opinion, however, that it is unnecessary to decide this question, involving as it does the effect or validity of said rule.

Where a case is submitted upon a statement of agreed facts, this constitutes a waiver of all objections to the form of procedure, *Kennedy* v. *B. A. Gardetto, Inc.* 306 Mass. 212, 220, 221, and cases cited, but we are of opinion that the facts do not entitle the plaintiff to relief.

Old age assistance was granted upon application, and a bond and mortgage were "required" of the Schroeders. Apart from this and the facts stated as to the ownership and assessed value of their real estate and the lack of any other property, nothing further appears as to the circumstances under which the bond and mortgage were required. For all that appears, the applications were filed and the assistance was granted upon the execution of the bond and mortgage that were required. There is nothing to indicate that the Schroeders were in doubt as to their rights, or that they gave them any thought. Obviously, they were making application for assistance under the provisions of a statute of comparatively recent origin. There is nothing to show that they made the slightest objection to the giving of the bond and mortgage, or that they had any thought of an appeal to the appeal board on that account. It is apparent that what the childless Schroeders wanted was assistance, and, for all that appears, the giving of the bond and mortgage did not concern them as anything more than a routine incident of obtaining it. The plaintiff's bill, it is true, alleges that the Schroeders, because of their impoverished condition, were "forced" to execute the bond and mortgage before they could obtain the necessaries of life and old age assistance; that the action of the town and its agents in compelling and forcing them without right to execute the bond and mortgage was illegal; that these instruments were without consideration; and that requiring the execution of them constituted such fraud or mistake as to entitle the plaintiff to have them rescinded. The defendants, however, in their answer, deny that there was any compulsion, force, fraud or mistake.

It is now settled that if one's conduct actually overcomes the mind and will of the person in question, so that he is deprived of his freedom of will by a wrongful influence, such conduct amounts to duress, and it is of no consequence how the domination over the mind is acquired, for it is enough that it is acquired. *Freeman* v. *Teeling,* 290 Mass. 93, 95, and cases cited. *Commonwealth* v. *Motta,* 298 Mass. 530, 532, 533. Coercion in the nature of fraud

must be proved expressly or inferentially. *Capen* v. *Capen*, 234 Mass. 355, 364.

The only coercion, if any, arises from the fact that the Schroeders were "required" to execute the bond and mortgage. It cannot be said that any confidential relations existed. See *Hinckley* v. *Barnstable*, 311 Mass. 600, 605. Compare *Hawkes* v. *Lackey*, 207 Mass. 424, 432, 433. Under the old age assistance law, the action of the local board was not necessarily final. If it had refused to grant assistance except upon compliance with a demand that the Schroeders execute the instruments, the law provided a remedy by appeal. If the action of the local board was sustained on appeal, it seems clear that a question of law would be involved which could have been reviewed by a court of competent jurisdiction. We have in mind that the administration of the old age assistance law, of necessity, involves persons who are sixty-five years of age or over, and that it well may be a matter of importance that they receive assistance to which they are entitled without unnecessary delay. The law provided, in § 1, however, that assistance should be given from the date of application therefor. It is not to be presumed that, upon appeal, there will be any unnecessary delay in hearing the aggrieved parties. If questions arise, as they frequently do, as to the interpretation of any legislative act, questions of expediency must give way to the orderly decision as to substantive rights, especially when we have in mind, as we must, that such decision affects not only the immediate parties, but also future interests of others. We are not unmindful that inferences may be drawn from the facts. See *Gold Brand Confectionery, Inc.* v. *Dimick*, 276 Mass. 386, 389. We are of opinion that the agreed facts do not warrant the conclusion that there was fraud, either actual or constructive. See *Carey* v. *Fitzpatrick*, 301 Mass. 525, 527–528, and cases cited.

The question remains whether the plaintiff is entitled to relief on the ground of mistake. There is nothing in the agreed facts to warrant the conclusion that there was any mistake of fact as that expression is commonly understood,

and there is no room for any suggestion that there was any mistake as to the legal effect of the bond and mortgage. The only possible mistake of law arises, if at all, from the construction or understanding of said § 4.

It is a general rule of law that relief is not granted for a mere mistake of law where a person is either ignorant of the law or mistaken as to what it prescribes. This rule, however, has its qualifications, many of which are reviewed in *Reggio* v. *Warren*, 207 Mass. 525. In that case it was said (pages 535–536) that, both upon principle and authority, the rule stated in *Renard* v. *Clink*, 91 Mich. 1, 3, was correct, to the effect that "where a person is ignorant or mistaken with respect to his own antecedent and existing private legal rights, interests, or estates, and enters into scme transaction, the legal scope and operation of which he correctly apprehends and understands, for the purpose of affecting such assumed rights, interests, or estates, equity will grant its relief, defensive or affirmative, treating the mistake as analogous to, if not identical with, a mistake of fact." Williston, Contracts (Rev. ed.) § 1589.

The foundation of the rule approved in the *Reggio* case is that a person must be ignorant or mistaken with respect to his own antecedent and existing private legal rights, and we think there is no room here for application of the rule. The plaintiff had the burden of showing that he was entitled to relief. For all that appears, the Schroeders may have been fully cognizant of the terms of the law upon which depended their rights to receive assistance. The fact that the law had not been construed on the point involved did not make the question any less one of law. *Hinckley* v. *Barnstable*, 311 Mass. 600, 603. The Schroeders, for all that appears, may have been willing to execute the bond and mortgage without reference to the requirements of the law. It is unnecessary to determine just what a mistake of this character, if there was one, should be called, that is, whether a mistake of law or of fact. Whatever it may be called, if it is to be of any consequence there must be evidence that it exists. See *Livingstone* v. *Murphy*, 187 Mass. 315, 317–318; *Indemnity Ins. Co.* v. *Paige*, 299 Mass. 523, 527;

*Blakeman* v. *Blakeman*, 39 Conn. 320; Williston, Contracts (Rev. ed.) § 1589. The difficulty with the plaintiff's case, on this aspect, is that there are no facts to indicate that the Schroeders were mistaken as to their rights. We have examined some of the cases involving the rule now under consideration, and in all of them there was evidence of the essential fact of mistake or allegations of it where the question arose on demurrer. See *Chalmers Chemical Co.* v. *Chadeloid Chemical Co.* 175 Fed. 995; *Haviland* v. *Willets*, 141 N. Y. 35; *Tarbox* v. *Tarbox*, 111 Maine, 374; *Renard* v. *Clink*, 91 Mich. 1; *Skillman* v. *M. J. Clark Memorial Home*, 229 Mich. 547; *Hammel* v. *United States Fidelity & Guaranty Co.* 246 Mich. 251; *Bottorff* v. *Lewis*, 121 Iowa, 27; *Burton* v. *Haden*, 108 Va. 51; *Kyes* v. *Merrill Furniture Co.* 92 Wis. 32; *Love* v. *Phillips*, 60 Utah, 329; *Peter* v. *Peter*, 343 Ill. 493.

There is a possibility that the giving of the bond and mortgage may have been the result of compromise. It has been said that the rule as to mistake affecting a person's private rights has no application to cases of compromise where doubts have arisen as to the rights of the parties, and they have intentionally entered into an arrangement for the purpose of compromising and settling those doubts. *Reynell* v. *Sprye*, 8 Hare, 222. *Tarbox* v. *Tarbox*, 111 Maine, 374, 380. Pomeroy's Eq. Jur. (5th ed.) §§ 849–850. It is unnecessary to repeat what has been said already as to the possibilities of what may or may not have transpired in the negotiations leading up to the giving of the bond and mortgage. There is the possibility of doubts having existed in the minds of the parties as to the construction of § 4 of the old age assistance law. The position of the Schroeders, when they executed the bond and mortgage, is not quite comparable with the position of the plaintiff today. It is fair to assume that the Schroeders wanted assistance, as has already been pointed out. Upon this record, how they were to get it does not seem to have concerned them very much, and, as far as appears, they never complained. At least, they got the assistance. The plaintiff, who stands in their shoes, may well attempt to look at the transaction from

a different point of view. But the burden, nevertheless, rests upon him of establishing his case, and we are of opinion that he has failed. The transaction must be examined from the viewpoint of the parties at the time it was consummated. The circumstances, as presented, are such that we cannot say that the giving of the bond and mortgage was without consideration. It is probably unnecessary to observe that our conclusions are reached within the limitations imposed by the agreed facts. The result is that the decree must be reversed, and a final decree entered dismissing the bill with costs.

*Ordered accordingly.*