FRANCES B. YOUNG vs. MILIJA PAQUETTE & another
(and a companion case[1]).

Bristol.    February 2, 1960. — May 6, 1960.

Present:  WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE,
& CUTTER, JJ.

*Trust*, Resulting trust, Oral trust, Statute of frauds, Constructive trust.
*Real Property*, Joint tenancy, Life estate, Partition.  *Joint Tenants.
Frauds, Statute of. Duress. Fraud. Probate Court*, Findings by
judge, Appeal, Petition.

Upon an appeal, with a report of the evidence, from a decree of a Probate
Court containing some findings of fact, the entry of the decree imported
findings of all other facts necessary to support it so far as they were
permissible on the evidence and not inconsistent with the findings ex-
pressly made.  [69]
A conclusion that upon a purchase of real estate conveyed to two jointly
one of them held her interest on a resulting trust for the other was not
justified where both assumed and agreed to pay outstanding mortgages
on the property.  [74]
The record did not justify a conclusion that real estate standing in the
names of mother and daughter as joint tenants was intended and un-
derstood by them actually to be solely the property of the mother,
but did justify a conclusion that, although the daughter had a present
joint tenant's legal interest, it was subject to an oral trust that during
the mother's life the rents and profits and the duty to pay all charges
would be hers and the daughter would not alienate or encumber her
interest.  [75–76]
A suit in equity might be maintained to enforce an oral trust of real estate
where the statute of frauds was not pleaded.  [76]
The allegations of the petition in a suit in equity in a Probate Court
between two joint owners of real estate were sufficient to put in issue the
existence of an oral trust on which one of the parties held her joint
tenant's legal interest for the benefit of the other as cestui during the
cestui's life.  [76]
Evidence did not support a conclusion that a settlement of controversies
between mother and daughter, whereby real estate was conveyed by the
mother through a straw to herself and the daughter as joint tenants
subject to provisions that during the mother's life the rents and profits
and the duty to pay all charges should be hers and the daughter would

[1] The companion case is Julia Bosak vs. Frances B. Young & another.

not alienate or encumber her interest, was procured by fraud or duress practised on the mother, or that there was any basis for imposing on the daughter any constructive trust of her joint tenant's legal interest. [78]

One of two persons holding real estate as joint tenants could not maintain a petition for partition of the real estate where the petitioner's joint legal interest was held subject to provisions entitling the respondent to the rents and profits, and obligating the petitioner not to alienate or encumber her interest, during the respondent's life. [79]

PETITIONS filed in the Probate Court for the county of Bristol on September 12, 1956, and November 24, 1958, respectively.

The cases were heard by *Mullaney, J.*

*Solomon Rosenberg, (George H. Young* with him,) for Frances B. Young & another.

*Charles R. Desmarais,* for Julia Bosak.

WHITTEMORE, J.  These appeals from two decrees of the Probate Court of Bristol County present a dispute over the beneficial ownership of two parcels of real estate in New Bedford, one on Blackmer Street, the other on Allen Street. The principals are Julia Bosak and her daughter Frances, formerly married to one Kaczmarek, and now the wife of Mr. George H. Young.  Frances, on September 12, 1956, filed a petition for partition, alleging coöwnership of the two parcels with her sister, Milija Paquette.  Julia was allowed to intervene.  On November 24, 1958, Julia brought a petition in equity against Frances and George seeking a decree of reconveyance of the parcels to Julia on allegations that Julia had purchased the parcels with her own money, that Julia and Frances both intended that the properties belong only to Julia, and that title had been taken jointly with Frances due to mistake or fraud.

After hearing evidence, which is reported, the probate judge on December 22, 1958, dismissed the petition for partition on the ground that the parties did not hold the land as tenants in common.  Also on that date the judge entered a decree in the equity case, which included findings.  In the decree the judge ruled that the titles to the two parcels had always been in Julia, ordered Frances and George to sign

all necessary instruments to transfer all their alleged rights and interests therein, and ordered Julia to reimburse Frances in the sum of $1,265.60 and interest for repairs and improvements paid for by Frances.

The judge found in respect of the Blackmer Street parcel that Julia purchased and maintained it with her own funds, that Frances at all times considered it to be entirely Julia's property, that Julia at one time intended "to allow . . . Frances . . . to benefit by receiving this property at her death," but later changed her mind. The findings in respect to the Allen Street parcel were that Julia purchased it with her funds, executed a deed transferring it to Julia and Frances in joint tenancy with right reserved in Julia to collect all rents during her lifetime, that Julia and Frances at all times understood that it was the property of Julia, that Julia and Frances resided in the house and Frances made improvements and repairs expecting the property to become hers at Julia's death, that Julia "changed her mind about this," and that Julia would be unjustly enriched unless Frances was reimbursed. It was also found that Julia "executed the deeds to both parcels . . . without a full and adequate understanding of the significance of a joint tenancy."

Frances has appealed from the decree dismissing the petition for partition; Frances and George have appealed from the decree ordering conveyance; and Julia has appealed from the latter decree in so far as it orders a payment to Frances.

The evidence shows that Julia conveyed to Milija Paquette on June 25, 1956, and that Milija reconveyed her interest to Julia on November 20, 1958. Both deeds bore the notation that no stamps were required.

The voluntary inclusion in the decree of some findings does not bar the application of the rule that the decree imports the finding of every fact, so far as the evidence permits, which is necessary to support it and is not inconsistent with the facts found. *Klefbeck* v. *Dous*, 302 Mass. 383, 387–388. *Carmichael* v. *Carmichael*, 324 Mass. 118, 119.

*Birnbaum* v. *Pamoukis,* 301 Mass. 559, 562. We are to decide the case on our own judgment of the evidence, accepting the express and implied findings unless plainly wrong. *Artemis* v. *Malvers,* 322 Mass. 136, 137. *Cowden* v. *Cutting,* 339 Mass. 164.

We notice first the evidence of facts which do not appear to be in dispute or which we think are established by the evidence.

Frances graduated from high school in 1932, and went to work. She lived with Julia until her marriage to Kaczmarek in 1944. That marriage failing in 1946, Frances returned home with an infant son; Julia agreed to take care of the infant and Frances to work and pay expenses. Frances remained with her mother until Frances's marriage to Mr. Young on March 23, 1954. After Frances's marriage in 1954, the Youngs and Julia lived in Westport, Julia occupying a cottage adjoining Mr. Young's house. Julia remained there until she left suddenly in early 1955 after a falling out with her daughter and son-in-law.

The property on Allen Street was purchased in the joint names of Julia and Frances in 1940. The Blackmer Street property was purchased by Julia in 1955 after the falling out, and was transferred into joint ownership in June, 1955, in an adjustment of Frances's claims in respect thereto and to the proceeds of a loan made to Mr. Young in 1950. That loan had been made in greater part from the joint savings account of Julia and Frances. It is necessary to look at these and related transactions in some detail.

### The Joint Savings Account.

Julia did not work away from home regularly after 1932, except for a period during the second world war. In 1932, Julia caused Frances's name to be added to Julia's savings account, in which there was at the time between $250 and $300. Since then the account has stood in the names of "Julia Bosak or Frances Bosak payable to either or the survivor." From 1932 until 1944, Frances turned over at

least some of her earnings to Julia and took to the bank for deposit in the joint account sums which Julia put in her hands for that purpose.

JOINTLY HELD REAL ESTATE 1939–1954.

On January 9, 1939, Julia's house in Westport was exchanged for a house on Penniman Street, New Bedford. Title to the latter property was taken in the names of Julia and Frances as joint tenants, the property was rented, the rents collected by Frances, paid over to Julia, and, in part at least, deposited in the joint account. Julia and Frances in 1939 and much of 1940 lived in rented premises, but shortly after August 24, 1940, they moved into the Allen Street property, having on that day taken title in their joint names, subject to two mortgages which the grantees assumed and agreed to pay. No payments on the mortgages were made from the joint account. Frances, except for the years 1944 to 1946, continued to live with Julia in the Allen Street house until her marriage in 1954. In July, 1954, Julia and Frances gave a lease of the Allen Street house for a five year term. The rent under that lease, until about the time of the falling out in 1955, was collected by Mr. Young and paid over by him to Julia.

On September 7, 1946, because of divorce proceedings, Frances and Kaczmarek conveyed to Julia the jointly held properties on Penniman Street and on Allen Street. Frances understood that Julia made a will about that time to protect her. Also on September 7, 1946, the Penniman Street property was sold by Julia's deed, the balance due on the mortgage was paid, and the net proceeds of $4,427.09 were deposited in the joint account. Mr. Young acted for Julia and Frances in these transactions having been advising Julia for some time. Eight years later, on April 12, 1954, Julia, through a straw, reconveyed the Allen Street property to herself and Frances as joint tenants, Mr. Young handling the transaction for his wife and for Julia.

THE LOAN TO GEORGE H. YOUNG IN 1950.

On June 7, 1950, Mr. Young and his then wife gave two mortgages to Julia, on real estate which does not otherwise concern us. These were to secure a loan of $7,000 of which $6,000 came from the joint account of Julia and Frances, and $1,000 came later from Julia's cash. On the same day the mortgages were assigned to Frances B. Kaczmarek by an instrument written in longhand by Mr. Young. Under date of March 21, 1952, Mr. Young, then unmarried, re-mortgaged the property to Julia Bosak and Frances B. Kaczmarek, "the survivor to have the full beneficial interest." The five year note of that date ran to them with the same statement of survivor's right. None of these mortgages was recorded. Frances received all the papers when they were executed.

THE BLACKMER STREET PURCHASE AND
SUBSEQUENT ACTION.

After leaving Mr. Young's property, Julia, on April 23, 1955, demanded of Frances, and received through an attorney, the joint savings account book, which Frances had held for some time, and the outstanding instruments concerning the 1950 loan to Mr. Young. Julia, on May 14, 1955, bought the Blackmer Street property, paying $1,720.72 from the joint account (leaving $1 therein) and giving a $3,000 mortgage to a savings bank.

Julia about this time also demanded payment of Mr. Young's mortgage because she needed the money in connection with the Blackmer Street purchase. Frances then sought to persuade her mother to put the Blackmer Street property in joint ownership as neither she nor Mr. Young wished to have the latter pay the loan until and unless it was settled that Frances's claimed interest in the proceeds of the joint account was recognized. Frances told Julia that the $7,000 was "going to be split as joint tenants." Julia declined to transfer the property and Frances sought the help of the third sister, Stephaney Gagne, and made several visits in her effort to secure a deed. Frances gave

her mother $10 to go to a lawyer. Julia consulted Mr. Frank Farin, who spoke with her in Polish. Frances thereafter spoke with Mr. Farin and told him she wanted a deed in joint ownership.

On June 20, 1955, Julia by deed to which Mr. Young affixed stamps, "representing the equivalent of $2,976.60 . . . [used] to satisfy and discharge the [purchase money] mortgage" on the property, conveyed the Blackmer Street parcel to Mr. Young's secretary. The deed was witnessed by and acknowledged before Mr. Farin. Recorded with this deed on September 2, 1955, was a deed from the secretary to Julia and Frances as joint tenants in which it was provided, "Grantee, Julia Bosak, is to received [sic] all rents and profits solely as they shall accrue from said premises; the grantee, Frances B. Young, hereby further agrees in no way to convey, encumber or otherwise mortgage or transfer any part of her title to said premises during lifetime of said Julia Bosak. Said Julia Bosak agrees to pay any and all charges hereafter accruing on said premises during her lifetime." The deeds were held in escrow until the mortgage payment was made in September. Of the net amount due from Mr. Young $2,976.60 was paid to the savings bank to discharge Julia's mortgage on the Blackmer Street property and the balance, something over $3,800, was paid to Julia.

Julia, in connection with the settlement, demanded that Frances pay $74 as one half of outstanding taxes on the Allen Street property, and Frances did this. Frances also agreed orally that the rents on Allen Street should go to her mother during her life.

CERTAIN TESTIMONY OF FRANCES AND GEORGE YOUNG.

Frances testified that money deposited in the joint account came from her earnings and that payments on the Allen Street mortgage were made by her from her own funds. She testified also that she would not have delivered the bank book to Julia in 1955 "unless . . . [she had] desired to give . . . [it] and its contents to" Julia to do with

as she pleased; that she was then told her mother needed funds to live on. Frances also testified that she was willing to sign over to her mother all her interest in the Blackmer Street property and "other such properties" "if it is in her name and if . . . should there be anything left . . . it come back to me." Mr. Young testified that Julia at some time after the break in the relations in 1955 asked him to act for her and he declined.

### Julia Bosak's Testimony.

Julia's testimony, given through an interpreter, was scarcely coherent. It can be concluded, however, that she testified that all the money in the joint account was hers, that the account was put into the joint names because Frances took the money to the bank, that she had the property put in both names because she was afraid her husband might claim it on her death; the property was not in both names, "the only thing she says [is] if anything would happen to her, Frances would have it, that's the time she signed half to her"; she signed the paper for Mr. Farin not to give Frances one half the property, but because she had no money; Frances would not help her, they would put her away; Frances wanted to kill her; Mr. Farin said if she did not sign she would not get a penny and they would do what they pleased with her.

### Ownership of the Allen Street Property.

The decree is apparently based, in part at least, on the premise that there were resulting trusts of both parcels. This is in error for it is plain that Julia did not furnish all the consideration in either case. There could be no resulting trust of the Allen Street property in view of the assumption of the mortgages by Frances. *McPherson* v. *McPherson*, 337 Mass. 611, 614. The consideration for the deed of the Blackmer Street property in 1955, as more fully discussed below, was the adjustment then made.

The evidence justifies the implied finding of the probate judge that Julia intended in accordance with Frances's ex-

pectation that she would have the Allen Street property at Julia's death. There is no basis in the evidence, however, for finding a change of mind by Julia prior to 1955. At that time Frances had a legal interest in the Allen Street property which Julia could not destroy by changing her mind. See *Crawford* v. *Spencer*, 8 Cush. 418, 420.

We think that the finding that Frances understood that the real estate was the property of Julia is wrong so far as it finds against a legal interest in Frances which would become sole beneficial ownership on Julia's death. The evidence permitted the finding that Julia did not have "a full and adequate understanding of the significance of a joint tenancy." We discern, however, no basis for concluding that she did not wish Frances to have a present interest which would operate to give Frances the full legal and beneficial title on Julia's death. We accept the finding as a determination that Julia did not understand that a joint tenant has present ownership rights including the right to require partition. G. L. c. 241, § 1. This finding is insufficient to require Frances to relinquish the legal title. It is significant, however, with other facts shown in the evidence, on the issue of an oral trust. The showing that the rent of the Allen Street house was turned over to Julia, Frances's oral agreement at the time of the Blackmer Street adjustment that the Allen Street rents should go to Julia, and Frances's expressed willingness at one point in the trial to create at least a life interest in Julia in all the real property speak strongly of Frances's understanding also that Julia was to have the beneficial interest for her life in the Allen Street property. The evidence that Julia received the Penniman Street rents and other funds is confirmatory. The Blackmer Street adjustment is also relevant. Our conclusion is that Julia and Frances had a sufficient common understanding and intent to create an oral trust for Julia's life applicable to Frances's interest in the Allen Street property, the terms of which were substantially those later made express for the Blackmer Street

parcel. See *Abalan* v. *Abalan,* 329 Mass. 182; *Barche* v.
*Shea,* 335 Mass. 367, 370.

This oral trust may be enforced in these proceedings not-
withstanding the statute of frauds (G. L. c. 203, § 1; c. 259,
§ 1) for that statute was not pleaded. *Abalan* v. *Abalan,*
329 Mass. 182, 183. See *Simpson* v. *Henry N. Clark Co.*
316 Mass. 118, 121; *Cluff* v. *Picardi,* 331 Mass. 320, 322;
*Barche* v. *Shea,* 335 Mass. 367, 370. Compare *Saulnier* v.
*Saulnier,* 328 Mass. 238 (the original record shows that the
statute was not pleaded; the alleged trustee refused to con-
vey); *Ranicar* v. *Goodwin,* 326 Mass. 710 (statute pleaded).
Julia's petition averred in substance that Frances's legal
title was held subject to Julia's entire beneficial interest.
The precise averments were that "your plaintiff did not
intend that Frances . . . have any right, title or interest or
ownership in said properties to which she contributed no
consideration, which fact the defendant, Frances . . . well
knew and always intended that the said properties were to
belong to the plaintiff alone," and also "the defendant has
always led her to understand that the plaintiff was the ac-
tual and sole owner of said properties." We think an oral
understanding and agreement in respect of the joint legal
interest in Allen Street was therefore in issue under the
petition.

## OWNERSHIP OF THE BLACKMER STREET PROPERTY.

The finding that Julia purchased and maintained the
Blackmer Street property with her own funds is supported
(but only as to the initial purchase and early maintenance)
by Frances's testimony which justified the conclusion that,
whatever Frances's interest in the balance in the savings
bank, she intended to give that interest to Julia when the
bank book was delivered in April, 1955. It could be con-
cluded also that Frances recognized the Blackmer Street
property as Julia's in the short time after its purchase and
before Julia's demand for payment of the Young mortgage.
Plainly, however, after the deed to Julia and Frances of
June 20, 1955, Frances claimed the interest in the Blackmer

Street property which that deed defined. The finding that Julia at one time intended to allow Frances to benefit by receiving the property at her death can reasonably relate only to the question of Julia's intent in consenting to the June 20, 1955, transaction but we are not sure it is so intended. The finding that Julia did not fully understand the nature of a joint tenancy is of limited, if any, significance since the deed put a material limitation on the joint tenancy and is in this respect confirmatory of an intent in Julia to give Frances a present legal interest with a beneficial interest beginning on Julia's death.

We think that the Blackmer Street deed may not be upset on the findings, the evidence and the pleadings. We see no basis for concluding that Frances made the claim to an interest in the Young mortgage proceeds in bad faith. The established facts show a substantial basis for such a claim. They show also a reason why Frances in good faith could believe that, since Julia had used the $1,720 to buy real estate rather than for her living expenses, Frances should have an interest in the property thus acquired. We need not pass on the validity of this belief in view of the facts found by the judge.

The settlement does not appear unfair to Julia and hence suspect. The evidence shows Julia's intent, existing up to the time of the falling out, that the beneficial interest in property bought with funds of Julia, or of Julia and Frances, should on Julia's death belong to Frances and that the device of a joint tenancy, subject to an oral understanding, be used to accomplish this. By the June, 1955, adjustment (1) the equity in the Blackmer Street property was substantially increased by the discharge of the purchase money mortgage; this was paid from the proceeds of the Young mortgage note which ran to Julia and Frances and was itself the proceeds of the joint bank account; (2) Julia received outright the larger part (about $3,800) of the proceeds of the Young mortgage and gave up her sole interest in the original $1,700 equity in the house; (3) Frances's interest in the Blackmer Street property was subjected to a

written statement of Julia's beneficial interest for her life.

The evidence would not support the conclusion that the settlement of June 20, 1955, was procured by fraud. Mr. Farin testified. We discern no basis for concluding that he acted against his client's interest or halfheartedly for her. There is no evidence to support the view that the deed did not embody the settlement agreed upon. The judge made no finding of duress and the petition does not allege it. There is no basis therefore to support the decree by an implied finding that Julia acted under compulsion. We think that the evidence could support the conclusion that Julia made the conveyance in June, 1955, reluctantly and because she believed that voluntary payment of the Young mortgage would not otherwise be made; but we do not conclude that Julia acted under duress or coercion. See *Fleming* v. *Dane,* 298 Mass. 216, 218; *Carey* v. *Fitzpatrick,* 301 Mass. 525, 527–528; *Allen* v. *Plymouth,* 313 Mass. 356, 360–361; *Cappy's, Inc.* v. *Dorgan,* 313 Mass. 170, 174.

There was no fiduciary or confidential relationship on which a constructive trust could be founded. *Ranicar* v. *Goodwin,* 326 Mass. 710, 713–714. See *Hawkes* v. *Lackey,* 207 Mass. 424; *Samia* v. *Central Oil Co. of Worcester,* 339 Mass. 101, 112.

We hold that the reconveyance from Milija Paquette to Julia reëstablished the legal and equitable relationships between Julia and Frances which existed prior to the deed to Paquette. It is implicit in the understanding as to Allen Street and the express provisions as to Blackmer Street that the joint tenancy will not be disturbed by the voluntary act of either Julia or Frances in such a way as to lessen the rights of the other resulting from their understanding and intent in respect of the ownership and enjoyment of the beneficial interests.

## CONCLUSION.

The decree in the equity proceeding is reversed. A decree is to enter establishing the trust of the Allen Street property substantially in the terms made express as to

Blackmer Street in the deed to the joint tenants of June 20, 1955, and adjudging that the title to each parcel is jointly in Julia and Frances subject to the applicable trust.

There was no error in dismissing the petition for partition. The express obligations for Julia's life subject to which Frances holds title bar such division of the Blackmer Street property; similar obligations are implicit in the oral trust of the Allen Street property. Because of its form, however, the decree is vacated and a new decree dismissing the petition is to be entered.

*So ordered.*