**Ricardo JASTRZEBSKI, Plaintiff,**

v.

**The CITY OF NEW YORK et al., Defendants.**

**No. 75 Civ. 3974.**

United States District Court,
S. D. New York.

Nov. 5, 1976.

---

Easton & Echtman, P. C. by Henry J. Easton, Bernard Levin, New York City, for plaintiff.

W. Bernard Richland, Corp. Counsel, City of New York by William J. Walls, James F. Morgan, New York City, for defendants City of New York and John J. Egan.

Lehman, Rohrlich & Solomon, New York City, for defendant James Sottile.

## MEMORANDUM OPINION

MOTLEY, District Judge.

This is an action in two counts, the first cause of action purporting to assert com-

mon law claims of false arrest, malicious prosecution, and false imprisonment against all the defendants, and the second cause of action purporting to state a federal claim, based upon substantially the same factual allegations, for deprivation of plaintiff's civil rights by defendants Sottile, Aquiluz, Martinez and Rivera. In response, the City and defendant Egan have moved to dismiss the complaint against them (i. e. the first count) pursuant to Rule 12(b)(6), Fed.R. Civ.P., on the ground that the claims contained therein are barred by the applicable New York State statutes of limitations. In the court's view, this argument has some merit and the motion to dismiss is granted in part.

## I.

The essential allegations of the complaint are quite straightforward, as follows: Plaintiff is a citizen of the Republic of Argentina. During the period when the acts in question took place, defendant Egan was a lieutenant in the New York City Police Department. Defendants Sottile, Aquiluz, Martinez and Rivera were assigned to the Special Investigations Unit of the Bureau of Narcotics of the Police Department under the supervision and control of defendant Egan. All acts of the individual defendants were allegedly performed within the scope of their employment as police officers.

Briefly stated, it is alleged that Sottile, Aquiluz, Rivera and Martinez maliciously, unlawfully, and wrongfully arrested plaintiff on or about November 2, 1970 at about 1:00 A.M. when plaintiff was lawfully on the street. Defendants allegedly had neither a warrant nor probable cause for making such an arrest. It is further alleged that these defendants gained entrance to plaintiff's place of abode by the pretense that they wished to confirm his identity.

Subsequently, plaintiff was allegedly taken to a police precinct house, where the defendants informed him that he was to be charged, falsely, with possession of a loaded revolver and a quantity of dangerous drugs, both of which had been in the exclusive control of defendants immediately prior to their arrest of plaintiff and had never been in plaintiff's actual or constructive possession. (The pistol had allegedly been illegally obtained and retained by defendant Egan in or about May of 1970, as a part of a conspiracy with the other defendants for its fraudulent and illegal use in connection with Police Department business.)

Plaintiff was then indicted on those charges, to which he pleaded not guilty, and was held "in bail of $100,000". It is alleged that, at that time, plaintiff had been in this country only a few weeks; that he was without friends or relatives here; and that he was ignorant of the customs, institutions, and language of the United States. Plaintiff's legal counsel advised him that the defendants appeared to have a strong case against him, even though it was allegedly spurious, and that he faced substantial criminal penalties if he were to be convicted. Therefore, his counsel urged him to enter into a plea bargain, whereby he would plead guilty to a charge of possession of an unloaded weapon, in return for dismissal of the drug charge and a sentence of not more than one year on the lessened gun charge.

Due to his unfamiliarity with the institutions of the United States and due also to the malice displayed by defendants Sottile, Aquiluz, Martinez and Rivera in allegedly "planting" the contraband articles on him, plaintiff allegedly believed that the defendants sought to obtain his conviction on the charges stated in the indictment. Therefore, "plaintiff's mind was dominated by the threats of said defendants, implicit and explicit, and he also believed that he could largely avoid long term imprisonment by following his attorney's advice and pleading guilty to a single reduced charge. Accordingly, acting under such duress, plaintiff was coerced, induced and compelled to plead guilty to a reduced charge of unlawful possession of an unloaded weapon. He was sentenced to one year in jail and was actually incarcerated for ten months." (Complaint, ¶ 17). It appears to be undis-

puted that plaintiff was released from prison in or about September of 1971.

It is further alleged that defendant Egan, upon being informed of the actions of the other defendant policemen, ratified and approved such actions. Moreover, the City and its agents allegedly acted maliciously and knowingly in bringing false charges, coercing a guilty plea, and procuring plaintiff's conviction and incarceration, with knowledge of his innocence and with the intent to violate his legal and constitutional rights.

On or about May 15, 1974, defendant Aquiluz allegedly confessed, during testimony in a federal criminal prosecution against defendant Egan in the Eastern District of New York, that the charge of possession of a dangerous weapon had been knowingly false and malicious. Moreover, it is alleged that defendant Sottile similarly confessed on or about June 6, 1974 during a different federal criminal prosecution against defendant Egan in the Southern District of New York.

On or about August 7, 1974, plaintiff presented his claim in writing to the Comptroller of the City, who refused to adjust it. Approximately a year later, on August 12, 1975, the instant action was filed. Finally, on May 27, 1976, the Supreme Court of the State of New York allegedly issued an order vacating the judgment of conviction previously entered against the plaintiff, and dismissing the indictment on which he had been convicted.

## II.

On the basis of this chronology, it is urged that the complaint be dismissed, first, against defendant Egan on the basis of the four year delay between his discharge from incarceration and the institution of this case.

There appears to be no dispute that, in considering the first cause of action jurisdictionally predicated upon diversity of citizenship, the applicable statute of limitations is that of the State of New York. Section 215(3) of the CPLR provides that actions for, *inter alia,* false imprisonment and mali-

cious prosecution must be "commenced within one year". Accordingly, the relevant inquiry must be to ascertain when these alleged causes of action "accrued".

The tort of malicious prosecution is not complete, and the cause of action does not accrue, until the criminal action against the plaintiff has been terminated by a judgment in his favor. *Tranberg v. County of Nassau,* 28 Misc.2d 275, 209 N.Y.S.2d 995, 998 (Sup.Ct., Nassau Cty., Pt. 1, 1961); *see* Prosser, *The Law of Torts* 835, 838–841 (4th ed. 1971). The situation presented by this case is, of course, an unusual one in that the original proceeding resulted in a conviction by a plea of guilty (allegedly "coerced"), but the conviction was allegedly vacated some five and a half years later. However, the court finds no reason why plaintiff's cause of action should not "accrue" at the later time, i.e., May 27, 1976. Such a holding does no violence to the rationale for the "favorable termination" requirement. *See Prosser, supra,* at 838. His conviction has allegedly already been subjected to successful collateral attack, so the initial conviction no longer can be said to represent a determination that there was probable cause for his arrest and prosecution. Accordingly, the court holds that the cause of action against defendant Egan for malicious prosecution is not barred by the statute of limitations.

A cause of action for false imprisonment accrues upon the plaintiff's release from detention, *Wolfe v. State,* 57 Misc.2d 777, 293 N.Y.S.2d 384, 385 (Ct.Cl.1968); *Gomillion v. State,* 51 Misc.2d 952, 274 N.Y.S.2d 381, 383 (Ct.Cl.1966), while a cause of action for "false arrest" accrues at the time of his arraignment. *Baisch v. State,* 76 Misc.2d 1006, 351 N.Y.S.2d 617, 619 (Ct.Cl. 1974); *Huff v. State,* 27 A.D.2d 892, 278 N.Y.S.2d 12 (App.Div., 3rd Dept. 1967). At the very latest, therefore, plaintiff's claims accrued at the time he was released from prison in September of 1971. Absent some judicially cognizable excuse, therefore, it is clear that plaintiff's claims for false arrest

and false imprisonment are barred by the one year statute of limitations.[1]

Plaintiff apparently concedes that the one year limitation would ordinarily bar claims asserted after September 1972. However, he urges that he was under such "duress" as to toll the running of the statute until some time after defendants Aquiluz and Sottile allegedly confessed in the spring of 1974.

Specifically, he alleges as follows in his complaint: "20. By reason of the threats of defendants Sottile, Aquiluz, Martinez and Rivera, *implicit in their displayed malice,* plaintiff believed that any action that he might take towards his vindication would cause such defendants to renew and revive their false charges and to initiate new spurious charges and, therefore, his mind continued to be dominated by their threats and by fear. Accordingly, plaintiff did not take steps to prosecute this action until soon after on or about May 15, 1974. . . ." (emphasis added).

Stripped of its verbal circumlocutions, this paragraph merely alleges that the plaintiff was sufficiently intimidated by the alleged actions of the defendants in procuring his arrest and conviction in 1970 that he was fearful that additional false charges might be leveled against him in retaliation for his filing suit. For all that appears in the complaint, the plaintiff never again saw or heard from any of the defendants after November 2, 1970. Plaintiff specifically does not allege that any of the defendants ever warned him against filing suit, or that they threatened him in any way beyond filing the allegedly false charges against him. He has alleged, in short, no facts beyond those which comprise the alleged torts in suit. By way of explication in his memorandum of law, he argues that the fear so induced lasted until such time as the falsity of the charges against him was allegedly revealed by the defendants' confessions in federal court.

Plaintiff argues that "[t]hreats to do an unlawful act constitute duress," citing *Miller Motors, Inc. v. Ford Motor Co.,* 149 F.Supp. 790, 794 (M.D.N.C.1957), *aff'd,* 252 F.2d 441 (4th Cir. 1958), and *Philco Corp. v. Radio Corp. of America,* 186 F.Supp. 155, 162 (E.D.Pa.1960), and he further argues, with authorities, that threats to give false testimony or to assert a wholly unfounded claim constitute duress, such as to toll the running of the statute of limitations, or prevent the accrual of an action which the person under duress might otherwise institute. For the latter, crucial proposition, he relies upon *Kamenitsky v. Corcoran,* 97 Misc. 384, 161 N.Y.S. 756 (App. Term, 1st Dept. 1916), *rev'd on other grounds,* 177 App.Div. 605, 164 N.Y.S. 297 (App.Div. 1st Dept. 1917).

This is a difficult argument to maintain in this case, for a number of reasons. In the first place, CPLR § 201 provides that "[a]n action . . . must be commenced within the time specified in this article unless a different time is prescribed by law or a shorter time is prescribed by written agreement. *No court shall extend the time limited by law for the commencement of an action.*" (emphasis added). Thus, the legislature has made explicit its opposition to judicial tampering with the statutes of limitations as enacted. Cases such as *General Stencils, Inc. v. Chiappa,* 18 N.Y.2d 125, 272 N.Y.S.2d 337, 219 N.E.2d 169 (Ct.App.1966), involving the principle of equitable estoppel are inapposite here, since there has been no fraudulent concealment of the facts constituting the cause of action.

Even assuming that the facts stated constitute "duress", it is by no means clear that the principle supposedly enunciated by the *Kamenitsky* case, *supra,* is still good law in New York. In the first place, if *Kamenitsky* does, in fact, stand for the broad principle that duress may toll the running of the statute of limitations, it seems questionable that its precedential value has survived the

---

1. Section 215(3) of the CPLR makes no reference to a tort entitled "false arrest". However, in view of the substantial identity between that tort and "false imprisonment", *Prosser, supra,* at 42, and because the parties have raised no issue relative to this distinction, the court considers that the one year statute of limitations applies as well to the claims for "false arrest".

enactment of CPLR § 201. In the second place, however, *Kamenitsky* appears to stand for a more limited proposition related to the facts of that case. In that action, the plaintiff alleged that he had unlawfully been forced to make certain payments over a period of time under "duress" which, in that case, consisted of certain alleged threats. The "duress" to which the complaint referred was part of a pattern of extortionate conduct for which the plaintiff was seeking monetary recovery. The "duress" invoked in that case was part of the substantive cause of action alleged; it was not pleaded as a bar to the effect of the statute of limitations.

Finally, even assuming that duress might toll the running of the statute, the court is of the opinion that the facts pleaded in this complaint are not sufficient to establish any such "duress" as might have that effect. Reduced to their essentials, plaintiff's allegations are that he was so intimidated by the tortious acts of defendants that, without any further actions on their parts, he was deprived of a free will to institute his suit against them. This argument, if accepted, would prove too much, for any plaintiff—the victim of an assault, or a battery, or a defamation, for instance— could argue that he was subjectively so intimidated or traumatized by the tortious conduct of his adversary that he was unable to bring suit until some time well beyond the period established by the legislature for the institution of such actions. If, in each instance, the trial court were forced to make an *ad hoc* determination of the severity of the plaintiff's subjective fear in order to determine whether to waive the effect of the statute of limitations, then obviously the courts would be burdened by a plethora of preliminary inquiries which could defeat the very purposes which the statutes of limitations were designed to serve.

Plaintiff might have a stronger case if the defendants had actually approached him at some point and threatened him with dire consequences if he were to institute his litigation. However, in this case all plaintiff alleges is that he was *afraid* that the defendants *might* cause further unfounded charges to be lodged against him. As plaintiff's own authority indicates, "the mere fact that the plaintiffs *anticipated* duress does not establish it as a legal defense." *Philco, supra,* at 162. Accordingly, the court holds that so much of plaintiff's first cause of action as sounds in false arrest and false imprisonment is barred by CPLR § 215(3).

### III.

The foregoing discussion is partially dispositive of the claim made by the City that plaintiff's first cause of action is barred by virtue of his alleged failure to comply with §§ 50–e and 50–i of the General Municipal Law.[2] The former section requires that a notice of claim must be served upon the City within ninety days "after the claim arises". The latter section provides that an action against the City must be commenced within one year and ninety days "after the happening of the event upon which the claim is based."

In view of the court's ruling that plaintiff's claims based upon false arrest and false imprisonment accrued in September of 1971 at the latest, it is clear that plaintiff has not complied with §§ 50–e and 50–i and is therefore precluded from assert-

---

**2.** Section 50–e(1) provides that "[i]n any case founded upon tort where a notice of claim is required by law as a condition precedent to the commencement of an action . . . against a public corporation . . . or any officer, appointee or employee thereof, the notice shall comply with the provisions of this section and it shall be given within ninety days after the claim arises."

Section 50–i(1) provides that "[n]o action . . . shall be prosecuted or maintained against a city . . . for personal injury or damage to real or personal property alleged to have been sustained by reason of the negligence or wrongful act of such city . . . or of any officer, agent or employee thereof . . . unless, (a) a notice of claim shall have been made and served upon the city . . . in compliance with section fifty-e of this chapter . . . and the action . . . shall be commenced *within one year and ninety days after the happening of the event upon which the claim is based.*"

ing those claims against the City in this action.

■ A somewhat different problem is presented by the court's ruling that plaintiff's cause of action for malicious prosecution did not accrue until May 27, 1976. The question necessarily arises whether this date of "accrual" is the same as the time when the "claim arises" (in § 50–e) and the time of the "happening of the event upon which the claim is based" (in § 50–i). Although the language, particularly of the latter portion of the statute, is somewhat ambiguous on this point, the comments of the Joint Legislative Committee on Municipal Tort Liability (which recommended the 1959 amendment to § 50–i) seem to make clear that the decision not to refer in that section to the "accrual of the cause of action"[3] was based upon a desire to avoid the confusion resulting from the fact that an action against a municipality is possible, and therefore in one sense "accrues", only after the municipality has been served with a notice pursuant to § 50–e. N.Y. General Municipal Law § 50–i, p. 185 (McKinney 1965). The New York courts had been faced with—and had rejected—the argument that the statute of limitations for actions against a municipality was to be measured from the date when a notice of claim was filed with the municipality. *See Christian v. Village of Herkimer,* 5 A.D.2d 62, 169 N.Y.S.2d 81 (App.Div. 4th Dept. 1957), *aff'd,* 5 N.Y.2d 818, 181 N.Y.S.2d 212, 155 N.E.2d 122 (1958). However, the amendment was designed to remove any uncertainty by increasing by ninety days (the notice period of § 50–e) the time prescribed by § 50–i for the bringing of suit against a municipality, with the result that suit must be brought within a year and ninety days after what would otherwise be referred to as the accrual of the cause of action. In sum, this difference in language does not appear to indicate that the time

for suit is to be measured from anything other than the time when the action "accrues". *See Huff v. State,* 47 Misc.2d 1053, 263 N.Y.S.2d 897, 899 (Ct.Cl.1965), *modified,* 27 A.D.2d 892, 278 N.Y.S.2d 12 (1967).

■ Accordingly, the timeliness of plaintiff's notice of claim and institution of this action, with respect to the requirements of §§ 50–e and 50–i, is to be measured from the date the action accrued, i. e., May 27, 1976. This, of course, creates a somewhat anomalous situation, in that both filings would appear to be premature, since they were effected before all the elements of the tort of malicious prosecution could properly be alleged. However, the court is of the view that this situation does not create a jurisdictional bar to maintenance of the instant action.[4]

The purpose of § 50–i, read together with § 50–e, is "to give a municipality an opportunity to settle meritorious claims." *Renwick v. Town of Allegany,* 34 Misc.2d 461, 225 N.Y.S.2d 844, 846 (Sup.Ct., Cattaraugus Cty. 1962), *rev'd on other grounds,* 18 A.D.2d 877, 236 N.Y.S.2d 902 (1963). Although the notices were filed prematurely in this case, it appears to the court that the City was nonetheless afforded ample opportunity to take administrative action on plaintiff's claim. At the time the notice was filed in August of 1974, two of the defendants in this action had already allegedly confessed to "framing" the plaintiff on the 1970 charges against him. Although plaintiff's conviction had not yet been vacated, there was clearly available to the City at that time sufficient material (if the plaintiff's allegations are to be believed) to provide some support for his claim. In sum, the court is of the view that the City, in these circumstances, has not been prejudiced by what, in retrospect, appears to be a premature filing of the plaintiff's claim. Therefore, the court denies the motion to dismiss plaintiff's cause of action against

---

3. As in CPLR § 203(a).

4. *Cf. Schildhaus v. City of New York,* 23 A.D.2d 409, 261 N.Y.S.2d 909, 911 (App.Div. 1st Dept. 1965), *aff'd,* 17 N.Y.2d 853, 271 N.Y. S.2d 286, 218 N.E.2d 325 (1966), *cert. den.,* 385

U.S. 906, 87 S.Ct. 222, 17 L.Ed.2d 137, in which the Court, in dictum, and without analysis, indicated that a prematurely filed notice would be invalid.

the City insofar as it is based upon the tort of malicious prosecution.

Defendants' motion to dismiss is granted in part and denied in part as indicated.