**Chahram PAHLAVI, Plaintiff, Appellee,**

v.

**Petros PALANDJIAN,
Defendant, Appellant.**

**No. 86–1534.**

United States Court of Appeals,
First Circuit.

Argued Oct. 9, 1986.

Decided Jan. 21, 1987.

M. Frederick Pritzker with whom Elizabeth A. Ritvo, Steven L. Feldman and Brown, Rudnick, Freed & Gesmer, Boston, Mass., were on brief, for defendant, appellant.

Gene K. Landy with whom Joyce S. Samet and Widett, Slater & Goldman, P.C., Boston, Mass., were on brief, for plaintiff, appellee.

Before CAMPBELL, Chief Judge, COFFIN and BREYER, Circuit Judges.

COFFIN, Circuit Judge.

For the second time in two years defendant Petros A. Palandjian appeals a decision of the district court awarding summary judgment to plaintiff Chahram Pahlavi. *See Pahlavi v. Palandjian*, 744 F.2d 902 (1st Cir.1984). These parties last came before us when the district judge granted summary judgment on Pahlavi's complaint and, pursuant to Fed.R.Civ.P. 54(b), certified the judgment as final and appealable despite Palandjian's pending counterclaims. *Id.* We vacated the court's order, but on remand Pahlavi pressed for summary judgment on Palandjian's counterclaims as well, contending that these claims are barred by the relevant statutes of limitation. The district court first denied Pahlavi's motion, ruling that whether Palandjian's claim of duress tolled the statutes of limitation was

a genuine issue of material fact. *Pahlavi v. Palandjian*, 638 F.Supp. 9 (D.Mass. 1985). Later, however, the court reconsidered and granted Pahlavi's renewed motion for summary judgment, stating in summary fashion that the evidence of Palandjian's asserted fears was not "adequate to raise an issue of fact of duress." This appeal followed. We affirm.

## I. *Factual Setting.*

The events culminating in this appeal began during the late 1960s. Defendant Palandjian, then a dual national with both Iranian and American citizenship, was at that time engaged in the construction business in the United States. In 1966, with the assistance of his brother Leon, Palandjian became acquainted with Princess Ashraf, twin sister of the late Shah of Iran. Thereafter, Palandjian entered several substantial business transactions with Princess Ashraf and other members of Iran's royal family, including the Princess' son, plaintiff Chahram Pahlavi. The instant case, initiated by Pahlavi in 1983, involves claims by Pahlavi related to a dishonored check in 1979 as well as counterclaims by Palandjian regarding business dealings during 1969 and 1970. We first review the events that form the foundation for Palandjian's counterclaims, then turn to the facts underlying Pahlavi's claims.

Palandjian contends that Pahlavi has long owed him approximately $125,000 for debts accrued during 1969 and 1970. This debt serves as the basis for Palandjian's three counterclaims and also contributes to his defenses against Pahlavi's claim. First, Palandjian claims to have performed over $100,000 worth of excavation, landscaping, and construction work at Pahlavi's new palace in Sadabad, Iran during 1969 and 1970. Second, Palandjian claims to have provided aircrafts and pilots for Pahlavi's personal use on numerous occasions during 1970 without receiving compensation. Third, Palandjian alleges that Pahlavi borrowed a pair of gold and diamond cufflinks during a business trip to Dublin, Ireland in 1970 and has refused to return them to Palandjian despite repeated requests. According to Palandjian, these debts remained unpaid in 1979, when the events that precipitated Pahlavi's claim occurred.

Upon Palandjian's recommendation, Pahlavi had purchased stock in a Texas corporation known as New Optron, Inc. and held the stock until 1979, when New Optron redeemed the shares at a favorable price. Palandjian acted as Pahlavi's agent in the United States for the purpose of this transaction and was therefore the recipient of New Optron's check, payable to Pahlavi, in the amount of $127,400. After Palandjian received the New Optron check, he spoke with Pahlavi on the telephone. The two men discussed both the funds generated by the sale of the stock and the monies allegedly owed to Palandjian by Pahlavi. Palandjian contends that Pahlavi directed him to "sign the [New Optron] check and keep it." Accordingly, Palandjian heeded these instructions, endorsed the check, and deposited it in his personal account on March 15, 1979.

Two months later, Pahlavi called Palandjian to request that the funds from the stock sale be forwarded to him. Pahlavi allegedly stated that the money he owed Palandjian and the stock sale are "separate matters and let's treat them separately." According to Palandjian, Pahlavi also stated: "I will have your monies paid. You send me the check." Finally, Palandjian contends that when he questioned Pahlavi's sincerity concerning the transaction, Pahlavi responded by threatening him: "You people still have a lot left in Iran. I don't know what you are thinking about."

After seeking and receiving assurances from Princess Ashraf that the monies would be paid, Palandjian sent Pahlavi a personal check in the amount of $127,400 on May 18, 1979. The check was first presented to Palandjian's bank for payment on May 28, 1979, but the bank refused payment due to Pahlavi's improper endorsement. When the check was presented for a second time on June 5, Palandjian, who had not yet received the payment he expected in return from Pahlavi, directed

the bank not to make payment on the check. Following several unsuccessful attempts to reach a private resolution to this dispute, Pahlavi filed suit on February 18, 1983.

Pahlavi's complaint contends that Palandjian wrongfully negotiated the New Optron check and, alternatively, that he wrongfully dishonored the May 18 check when it was presented for payment. Palandjian asserted an estoppel defense to Pahlavi's first claim and four defenses to Pahlavi's second claim: want of consideration, failure of consideration, inducement, and duress. In 1984, the court below awarded Pahlavi summary judgment on his second claim, finding that Palandjian had not raised a genuine issue of material fact with regard to any of his four defenses. Later, in 1986, the court granted Pahlavi summary judgment on Palandjian's counterclaims, ruling that they were barred by the statute of limitations and that there were not sufficient disputed facts to permit the statute to be tolled by reason of duress. Both decisions of the district court are before us on this appeal. We turn first to the propriety of the more recent award of summary judgment on Palandjian's counterclaims.

## II. *Palandjian's Counterclaims.*

As noted above, Palandjian's three counterclaims all concern events that occurred during 1969 and 1970, and it is undisputed that the relevant statutes of limitation for these claims had long expired by the time these counterclaims were raised below.[1] Nevertheless, Palandjian argues on appeal that his counterclaims are timely for two reasons. First, he asserts that his delay in commencing litigation on these claims was caused by duress and that, therefore, the statute of limitations must be tolled. Second, he contends that his counterclaims are "compulsory counterclaims" and, hence, are not even governed by the relevant statutes of limitation. *See* Mass.Gen.L. ch.

260, § 36. We treat these issues separately.

### A. *Duress.*

The record on appeal contains only two factual references that pertain to the issue of duress. First, defendant Palandjian alleges in his affidavit that "[b]ecause of the power of the Iranian royal family and my fears for the safety of my family and property in Iran, I took no legal actions to enforce payment of my claim[s] while the Pahlavis were still in power in Iran." Second, Palandjian alleges that Pahlavi threatened him during a 1979 telephone conversation: "You people still have a lot left in Iran. I don't know what you are thinking about." In addition to these two references contained in the material considered by the court below, Palandjian has moved to enlarge the record on appeal by adding a supplemental appendix comprised of deposition testimony referring to threats allegedly made by Princess Ashraf. Palandjian, however, did not submit these portions of his deposition to the district court when it was ruling on Pahlavi's motion for summary judgment. We therefore refuse to consider this material as pertinent to his appeal.

We make two assumptions, favorable to Palandjian, for the purpose of deciding this issue. The first is that Massachusetts courts would recognize duress as tolling the statute of limitations in at least certain situations. *See Babco Industries, Inc. v. New England Merchants National Bank,* 6 Mass.App.Ct. 929, 930, 380 N.E.2d 1327, 1328 (1978) ("It is possible to imagine circumstances in which duress might toll the statute...."). *But see* 51 Am.Jur.2d Limitation of Actions § 138 at 708 (1970) ("[Most courts] will not, as a general rule, read into statutes of limitation an exception which has not been embodied therein, however reasonable such exception may seem and even though the exception would be an

---

1. Palandjian's first two claims sound in quantum meruit and are therefore governed by a six-year statute of limitations. Mass.Gen.L. ch. 260, § 2. The counterclaim pertaining to the

conversion of the cufflinks, however, is governed by the two-year limitation period provided by Mass.Gen.L. ch. 260, § 2A prior to its amendment in 1973.

equitable one.") Second, we also assume that Massachusetts would use a subjective standard for evaluating fear. *See, e.g., Omansky v. Shain,* 313 Mass. 129, 130, 46 N.E.2d 524, 525 (1943) ("[T]he evidence warranted a finding that the plaintiff obtained the note by threats that were in fact sufficient to overcome the will of the defendant, in the condition in which he was, whether or not they would have been sufficient to overcome the will of a person of ordinary courage and firmness.") *See also Allen v. Plymouth,* 313 Mass. 356, 360, 47 N.E.2d 284, 287 (1943).

■ Even with these assumptions, however, we must conclude that the facts taken in the light most favorable to Palandjian are insufficient as a matter of law to establish duress that would toll the statute of limitations. Except for the case of *Ross v. United States,* 574 F.Supp. 536 (S.D.N.Y. 1983), courts have universally rejected the theory that duress tolls the statute of limitations when, as here, duress is not an element of the underlying cause of action.[2] *See* Annotation, 121 A.L.R. 1294, 1295 (1939); *Baratta v. Kozlowski,* 94 A.D.2d 454, 464 N.Y.S.2d 803, 807 (1983). In *Ross,* the plaintiff was a former prison inmate who alleged violations of his fifth and eighth amendment rights while he was in prison. The plaintiff claimed that he did not file the action within the limitation period because he was still on parole and feared retaliation. In support of his fear, he cited various constitutional deprivations that allegedly occurred during his stay in prison. The court, citing to precedent that "a limitations period is tolled when a paramount authority prevents a person from exercising his legal rights," found these allegations sufficient to survive dismissal on statute of limitations grounds. *Ross,* 574 F.Supp. at 542.

*Ross* is helpful to Palandjian because it accepts tolling the statute of limitations on the basis of duress even without an explicit threat directed at preventing the filing of a

law suit. *Cf. Jastrzebski v. City of New York,* 423 F.Supp. 669, 673–74 (S.D.N.Y. 1976). Nevertheless, *Ross* did involve allegations of wrongful conduct by prison officials that was causally related to the plaintiff's subjective fear. The record of the instant case is devoid of references to any conduct similar to that found in *Ross.* Indeed, the personal affidavit accompanying Palandjian's opposition to Pahlavi's summary judgment motion is purely conclusory and contains no allegations of threats or actions by Pahlavi, his family, or his agents *during the limitation period* that could have caused Palandjian to be fearful of filing suit for the money allegedly owed him. The only threat even mentioned in the factual materials considered by the court below was Pahlavi's telephone statement in 1979, two years after the longest limitation period for Palandjian's counterclaims would have run. Even if Massachusetts were to permit duress to toll the limitation period, there is nothing to suggest that duress could revive claims that had already expired.

■ We believe that Massachusetts would, at the very least, require a party claiming duress as justification for tolling the statute of limitations to submit factual allegations regarding the coercive acts or threats of the prospective defendant. *See Freeman v. Teeling,* 290 Mass. 93, 95, 194 N.E. 677 (1935) (Duress, when asserted as an affirmative defense to a contract claim, requires a showing that the alleged victim was "deprived of the freedom of will" and that the alleged perpetrator acquired "dominion over [his] mind."); *see also Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1057 (5th Cir.1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983) ("anticipated duress" argument fails as a matter of law); *Jastrzebski,* 423 F.Supp. at 674 (person claiming duress must be threatened with "dire circumstances"). It is not enough merely to allege in conclusory

---

**2.** Palandjian's counterclaims for quantum meruit recovery and conversion are significantly different from those claims made by parties seeking to avoid apparent legal obligations on the ground that they originally entered into the commitments under duress.

terms subjective fear that is unrelated to any actions or statements by the other party. Because the necessary allegations are conspicuously absent here, the district court was justified in rejecting Palandjian's attempt to toll the limitation period by asserting that duress caused his failure to bring his claims in a timely fashion.

## B. *Compulsory Counterclaims.*

■ In addition to his claim of duress, Palandjian also contends that his counterclaims were "compulsory" and therefore exempt from the limitation periods contained in the Massachusetts statutes. Mass.Gen.L. ch. 260, § 36. In order to be characterized as compulsory, however, Palandjian's counterclaims must have arisen out of the same transaction or occurrence that is the subject matter of Pahlavi's claim. *Id.; see also* Fed.R.Civ.P. 13(a). This standard is plainly not satisfied in the instant case. Palandjian's counterclaims allegedly arose from a set of business and personal transactions during 1969 and 1970, whereas Pahlavi's claim arose in 1979 when Palandjian endorsed and deposited the New Optron check and stopped payment on his personal check to Pahlavi. The claim and the counterclaims simply have no facts in common and are only connected at all because the matter of Pahlavi's alleged continuing debt apparently influenced the actions of the two men in 1979. Palandjian's claim for those funds had arisen nine years earlier. The alleged setoff in 1979 is plainly insufficient to render Palandjian's counterclaims "compulsory" and place them beyond the reach of the relevant statutes of limitation. We therefore hold that the district court did not err in awarding Pahlavi summary judgment on Palandjian's three counterclaims.

## III. *Pahlavi's Claim.*

As "holder" of Palandjian's May 18 check, Pahlavi was entitled under the Uniform Commercial Code to recover on the check upon its production, absent the establishment of a defense by Palandjian. Mass.Gen.L. ch. 106, § 3–307(2). Palandji-

an's amended answer raises four such affirmative defenses, as to which he possessed the burden of proof. Nevertheless, Pahlavi is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *See Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). The issue before us, therefore, is whether Palandjian has raised a genuine issue of material fact regarding any of his defenses that would preclude an award of summary judgment in favor of Pahlavi.

## A. *Want of Consideration.*

■ Palandjian first raises the defense of want of consideration. He essentially contends that Pahlavi offered no consideration for receipt of the May 18 check and therefore cannot automatically recover on the check. The facts taken in the light most favorable to Palandjian, however, do not support this defense. It is undisputed that Pahlavi refrained from commencing legal action to recover the funds generated by the redemption of the New Optron stock, or at least to recover the $2400 difference between the alleged $125,000 debt owed to Palandjian and the $127,400 New Optron amount. Because this forbearance from suit alone would constitute sufficient consideration for the May 18 check, we cannot find that Palandjian has raised a genuine issue of material fact bearing on his lack of consideration defense.

The UCC, moreover, provides that "no consideration is necessary for an instrument ... given in payment of ... an antecedent obligation of any kind." Mass. Gen.L. ch. 106, § 3–408. Palandjian admits in his affidavit that Pahlavi desired to treat the New Optron matter separately from the debt that Pahlavi had allegedly owed to Palandjian since 1969 and 1970. Indeed, Palandjian wrote the words "New Optron

Shares" on his May 18 check, expressly indicating that the check represented the amount of funds generated by the redemption of Pahlavi's shares. Because Palandjian thereby admits that he sent the check to Pahlavi to settle an antecedent obligation, we can alternatively find that Palandjian's "want of consideration" defense fails as a matter of law because no consideration was necessary for the May 18 check.

## B. *Failure of Consideration.*

As a second defense, Palandjian has asserted that there was a failure of consideration. In other words, Palandjian's position is that the only possible consideration for the May 18 check was Pahlavi's promise, since repudiated, to send a separate check covering the monies he allegedly owed to Palandjian. We cannot accept this argument for the same reasons that we rejected the lack of consideration defense. First, Pahlavi's undisputed forbearance from suit was sufficient consideration for the May 18 check and there is no allegation that Pahlavi failed to proffer this consideration. Second, as noted above, UCC section 3–408 provides that consideration is not required for a check given in payment for an antecedent obligation. In light of these two factors, we are unable to find that Palandjian has raised a genuine issue of material fact regarding this defense.

## C. *Duress.*

Palandjian's third defense is premised on the theory of duress. He contends that he was free to dishonor the May 18 check because he had originally sent it under duress. We acknowledge that, in Massachusetts, a subjective standard governs the substantive defense of duress, *Omansky v. Shain,* 313 Mass. at 130, 46 N.E.2d 524, and that whether duress exists in a given situation is "entirely a question of fact." *Freeman v. Teeling,* 290 Mass. at 96, 194 N.E. 677. The sole basis for Palandjian's duress defense is his telephone conversation with Pahlavi during May, 1979, during which Pahlavi allegedly threatened to harm Palandjian's family and property in Iran if

Palandjian failed to send Pahlavi the proceeds of the New Optron stock sale. Pahlavi denies ever threatening or attempting to coerce Palandjian in any manner. We therefore do not dispute the existence of a genuine issue as to whether Pahlavi attempted to coerce Palandjian into sending the check.

■ On closer examination, however, we find this issue to be immaterial to the validity of Palandjian's affirmative defense because he has neither alleged nor offered any evidence to indicate that he actually acted under duress when he forwarded the check to Pahlavi. To be deemed a victim of duress under Massachusetts law, Palandjian must allege and demonstrate that he was "deprived of [his] freedom of will" and that Pahlavi had acquired "dominion over [his] mind." *Freeman,* 290 Mass. at 95, 194 N.E. 677. In fact, however, only one factual allegation in Palandjian's affidavit even tangentially refers to the effects of Pahlavi's purported threat: "In light of Mr. Pahlavi's promise that he would pay me, Princess Ashraf's promise that Mr. Pahlavi's debt to me would be paid *and also his threat to my family and property,* I sent Mr. Pahlavi a personal check in the amount of $127,400 on [May] 18, 1979."

This lone statement in Palandjian's affidavit fails to suggest that he acted under duress as that concept has been interpreted by the Massachusetts courts. Rather it seems to indicate that Pahlavi's alleged threat was, at most, a subsidiary factor that Palandjian considered before deciding to send Pahlavi the money generated by the sale of the New Optron stocks. Other facts admitted by Palandjian demonstrate his willingness to take actions with respect to the royal family that plainly cut against his cursory allegation of duress. For instance, he states that he *sought* assurances from Princess Ashraf prior to sending the check and that, less than three weeks after sending the check to Pahlavi, he instructed his bank to refuse payment on it. Both of these actions are inconsistent with Palandjian's contention that he was acting under duress at the time he sent the May 18

check. Viewing this cluster of allegations as a whole, we find them insufficient to raise a defense of duress under Massachusetts law. Because Palandjian has failed to allege or offer evidence showing that Pahlavi "deprived [him] of the freedom of will," we must conclude that Palandjian has failed to raise a genuine issue of material fact concerning his asserted duress defense. *Hahn,* 523 F.2d at 464.

### D. *Conditional Promise.*

■ Finally, Palandjian attempts to defend against Pahlavi's claim by asserting that his promise to honor the May 18 check was conditional upon Pahlavi's supposed promise to send a separate check covering the sum allegedly owed to Palandjian. To prevail on this defense, however, Palandjian must allege and establish the existence of a mutual agreement because contracting parties are bound by objective manifestations and expressions, not subjective expectations. *Restatement (Second) of Contracts,* § 2, comment b (1981). Although Palandjian asserts that he sent the May 18 check with the expectation that Pahlavi would send him a check covering past debts in return, there is no factual support in Palandjian's affidavit or in any of the other record materials to support the view that the parties agreed to make Palandjian's payment conditional on Pahlavi's payment. In fact, Palandjian states in his affidavit that Pahlavi wanted to treat the New Optron funds and the past debts as "separate matters." We must again find, therefore, that Palandjian has failed to raise a genuine issue of material fact with regard to this defense. As a result, Pahlavi is entitled to summary judgment on his claim related to Palandjian's dishonor of the May 18 check.

### IV. *Pre-Judgment Interest.*

As a final matter, Palandjian contests the district court's decision to grant Pahlavi's Motion to Correct Amount of Judgment and award Pahlavi pre-judgment interest from June 5, 1979 (the date on which Palandjian dishonored the May 18 check) rather than February 18, 1983 (the date on which Pahlavi commenced the instant litigation). Pahlavi cites two statutes supporting his motion, Mass.Gen.L. ch. 231, § 6C, and UCC section 3–122(4)(a). Section 6C provides that in actions based on contractual obligations, the clerk shall add interest from the date of the breach or demand if that date has been established. On the other hand, "[i]f the date of the breach or demand is not established, interest shall be added ... from the date of the commencement of the action." Palandjian contends the Pahlavi is not entitled to interest from June 5, 1979 because the court below failed to establish the date of the breach or demand.

■ "A 'demand' for purposes of [section 6C] is satisfied if the party charged is informed 'of the basis and extent of its obligation, as well as the fact that performance [is] then due.'" *General Dynamics Corp. v. Federal Pacific Electric Co.,* 20 Mass.App.Ct. 677, 678, 482 N.E.2d 824, 830 (1985) (quoting *Lexington v. Bedford,* 378 Mass. 562, 576, 393 N.E.2d 321, 330 (1979)). While it is true that the court below did not make a finding of fact regarding the date of the breach, it is undisputed that on June 5, 1979 Palandjian was aware of his obligation to honor the May 18 check, was contacted by his bank when the check was presented for payment, and explicitly ordered the bank not to honor the check. We therefore believe that the district court had a sound basis for treating June 5, 1979 as the date of the breach or demand and for granting Pahlavi's motion for pre-judgment interest from that date.

An alternative ground also justifies the court's decision to grant pre-judgment interest from the date of the breach rather than from the date of the complaint. UCC section 3–122(4)(b) provides that interest runs "from the date of the accrual of the cause of action." Mass.Gen.L. ch. 106, § 3–122(4)(b). Elsewhere in section 3–122 it is established that "[a] cause of action against a drawer of a draft ... accrues upon demand following dishonor of the instrument" and that "[n]otice of dishonor is a demand." Mass.Gen.L. ch. 106, § 3–122(2). Again, it is undisputed that Paland-

jian had actual notice of dishonor on June 5, 1979. It follows that Pahlavi's cause of action accrued on June 5, 1979 and that the court correctly amended its judgment to award him pre-judgment interest from that date.

## V. *Conclusion.*

For the reasons elaborated above, we first find that Palandjian's counterclaims are not compulsory counterclaims and that the facts taken in the light most favorable to him do not permit the statute of limitations to be tolled in his favor by reason of duress. The district court, therefore, properly dismissed his three counterclaims as untimely brought. Second, we find that Pahlavi was entitled to summary judgment on his claim related to Palandjian's dishonor of the May 18 check because Palandjian has failed to establish a genuine issue of material fact with respect to any of his four asserted affirmative defenses. Finally, the court correctly amended Pahlavi's judgment to include pre-judgment interest from the date of Palandjian's dishonor, June 5, 1979. Accordingly, the decision of the district court must be affirmed in all respects.

*Affirmed.*