**Ulwyn PIERRE, Plaintiff,**

v.

**INROADS, INC., Defendant.**

No. 93 C 3088.

United States District Court,
N.D. Illinois,
Eastern Division.

July 21, 1994.

---

**770**

Lester Lloyd Barclay and Crystal Laprie Roberts, Mansker & Barclay, Chicago, IL, for plaintiff.

Roger L. Taylor, Leslie M. Smith, Terri Ann Abruzzo, Kirkland & Ellis, Chicago, IL, for defendant.

### MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Ulwyn Pierre ("Pierre") has sued the former patron of her doctoral dissertation study,[1] INROADS, Inc. ("INROADS"), charging it with copyright infringement and breach of contract. INROADS, a nonprofit corporation engaged in helping minorities to advance in the business world, has responded with a motion for summary judgment denying both of those charges.[2]

Because no material issues of fact remain in dispute on Pierre's federal-question copyright claim, summary resolution of the entire case is indeed appropriate. That copyright claim (which appears problematic on the merits in any event) plainly falls on statute of limitations grounds, leaving her state law contract claim bereft of any supplemental jurisdictional predicate. And there is no reason to retain the state law claim under the circumstances. This action is therefore dismissed in its entirety (partly with prejudice, partly without).

### Background

As already stated, INROADS is a not-for-profit organization whose mission is to identify talented minority youth and prepare them for corporate and community leadership. Sometime in 1983 or 1984 Pierre, then a doctoral student at Columbia University's Teachers' College, approached INROADS about her dissertation project, a study of whether training provided by that type of institution actually enhances the upward mobility of minority youth. After speaking and corresponding with INROADS' Chief Executive Officer and President Reginald Dickson ("Dickson") and its Vice–President Charles

---

1. Pierre is of course entitled to refer to herself as "Dr. Pierre," as she has throughout her Complaint (though not in the current motion papers). However, this opinion reflects this Court's perhaps old-fashioned practice of limiting the use of the title "Doctor" to members of the medical and dental professions—with no offense intended to holders of Ph.D. or other doctoral degrees (including holders of the J.D. degree—which number most lawyers, including this Court).

2. Familiar Fed.R.Civ.P. ("Rule") 56(c) principles teach that to be "entitled to a judgment as a matter of law," the moving party must establish the absence of any "genuine issue as to any material fact" (Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). In that respect a "genuine issue" requires that there be sufficient evidence for a jury to return a verdict in favor of the nonmovant (Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)), while a "material fact" is one that "might affect the outcome of the suit under the governing law" (id. at 248, 106 S.Ct. at 2510; Pritchard v. Rainfair, Inc., 945 F.2d 185, 191 (7th Cir.1991)). Applying those principles, this Court is not required to draw "every conceivable inference from the record—only those inferences that are reasonable" in favor of nonmovant Pierre (Bank Leumi Le–Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir.1991)).

Story ("Story"), Pierre obtained permission to use INROADS' data on its alumni for her study. INROADS stood to gain from that arrangement as well, in that it would be better apprised as to its overall general effectiveness.

Hindsight has exposed a considerable difference of opinion as to the financial arrangements that were contemplated by the parties. For its part INROADS contends that it agreed to nothing more than to assist Pierre in soliciting funds from corporate contributors. In that respect INROADS states that it raised more than $90,000 in support of Pierre's study between 1987 and 1993 and paid her a total sum of $120,310 over the same period, a figure representing both the external funding and money out of its own coffers.[3] Pierre admits that she was continually reminded that any compensation she was to derive was contingent on the ability to identify contributors (D. 12(m) ¶ 14).

Feeling that INROADS was failing to live up its end of the bargain, Pierre wrote a July 14, 1987 letter to Dickson in which she explained that the cost of the study had "sky rocketed" due to unforeseen delays and that she was dissatisfied over (among other things) the "lack of clarity as to who has the final decision making power over this project regarding such things as finances, deadlines, and other resources, and etc." Pierre followed up that letter with another on July 20 (D.Ex. 10) in which she attempted to "reaffirm[ ] in writing" several oral agreements that had assertedly been reached at a June 22 meeting with Dickson and Story (and two other people). She appended a prospective budget calling for $109,250 "to be funded" (including a $35,000 salary for herself) and listing another $38,575 under "INROADS (in kind)." At the bottom of her letter Pierre included a signature line for Dickson if he "agree[d] to the terms stipulated in this letter."

Instead of signing, Story responded on INROADS' behalf with an August 3 letter (D.Ex. 12), stating in part:

> We are not interested in entering a contract with you. We are interested in completing the study. Floyd Brady and I will continue working with you to accomplish that end.

As a follow-up to that letter, Story sent Pierre an August 10 memorandum (D.Ex. 13) "to inform you of the steps INROADS is taking to assist in the completion of the alumni study." Story's memorandum said in part:

> 3. INROADS will act as fiscal agent for this project and assist in contacting potential funding sources.
>
> 4. For funding purposes you will be considered a consultant to INROADS until completion of the project, not to exceed 21 months. You will be paid exclusively from money raised for the project.

And on September 14 Pierre sent INROADS this two-sentence letter response (D.Ex. 14):

> I am in agreement with the terms set forth in the August 10, 1987 Memorandum.
>
> I look forward to reaching a successful conclusion to this project within a 21 month period.

To make this long story shorter (because as will be seen these facts are at best only peripherally relevant to resolution of this action anyway), Pierre now contends that the August 10, 1987 memorandum—along with Story's original December 7, 1984 letter (Complaint Ex. A) outlining the basic nonfi-

---

**3.** This Court has implemented Rule 56 by promulgating its own General Rule ("GR") 12(M) and 12(N), designed to smoke out any disputed issues of material (that is, outcome-determinative) fact. What has just been said in the text is referred to in Paragraph 13 of INROADS' GR 12(M) statement (cited here as "D. 12(M) ¶ —"). Instead of rebutting that contention, Pierre's GR 12(N) response states, "Plaintiff disputes the statements contained in Paragraph 13 to the extent that she lacks sufficient information as to how these figures were calculated." That assertion (properly suited to a pleading, but not to a GR 12(N) response) does not serve to controvert INROADS' evidence in that respect (*Aircraft Gear Corp. v. Kaman Aerospace Corp.*, 856 F.Supp. 446, 453 (N.D.Ill.1994)). Indeed, the evidence that INROADS proffers on that point (D.Ex. 2, Flanery Aff.) actually indicates that in addition to the $90,100 from corporate sources, INROADS actually paid out another $45,000 from its own general funds. If so, INROADS' $120,310 figure really *undercounts* its real contribution (*id.*, also stating that $191,066 of INROADS money in addition to its in-kind support services and facilities was ultimately spent on the project).

nancial understanding of their agreement—are ambiguous as a matter of law. She therefore urges this Court to conclude that extrinsic evidence must be admitted to demonstrate what she says are Dickson's and Story's binding contemporaneous oral assurances.[4] In total Pierre now seeks $274,274 in damages for breach of that claimed oral contract[5] (after giving credit for the money that she has already received from INROADS, an amount that she places at $95,764 in her Complaint ¶ 44—but see n. 3).

Pierre's copyright infringement claim derives from a really discrete set of facts: events that occurred at an October 12 and 13, 1988 Information Exchange Workshop (the "Workshop") that was co-hosted by INROADS and Mobil Oil in Washington, D.C. In attendance were business people at various levels, some of whom were INROADS alumni, and the agenda comprised interactive group discussions and brainstorming sessions. Upon arrival, those taking part were provided with copies of a document entitled "Minorities in Management," and the assembly was welcomed by Dickson's introductory remarks encouraging candid dialogue. After the Workshop concluded, its discussions and findings were summarized and reproduced in a document called "Findings of the 1988 Information Exchange Workshop, What Bridges Must Be Built: The Next Step," which was then disseminated to the participants shortly after the Workshop.

Pierre attended the Workshop, and she asserts that during the course of it "Dickson[ ] intentionally misappropriated the expressions of [her] ideas in his speech and workshop materials" (P.Mem. 11). In particular Pierre contends that Dickson illegitimately expropriated her concepts of "enhancers" and "inhibitors" and that the very format of the Workshop (that is, the topics covered) mirrored her study's questionnaire, which had previously been provided to INROADS. As her Mem. 11 summarizes:

Indeed, the workshop's entire theme dealt with the expression of ideas found in Pierre's questionnaire and related materials.

In claiming that those actions amount to copyright infringement, Pierre maintains that her ideas were borrowed without her permission and in contravention of "an express, oral agreement that *all* materials used in the Study would be confidential" (*id.* at 10). INROADS denies those charges, arguing a lack of "substantial similarity" in that Pierre can cite to no specific *words* allegedly taken from her study and that Dickson had no access to the questionnaires in any case. INROADS also attacks Pierre as attempting to claim copyright protection for noncopyrightable subject matter—for ideas rather than text. But it turns out that sorting out the parties' substantive disputes is not necessary for resolution of this case either, as demonstrated by the ensuing discussion.

*Copyright Claim*

Copyright Act § 507(b) ("Section 507(b)," 17 U.S.C. § 507(b)) provides that "no civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued" (see, e.g., *Taylor v. Meirick,* 712 F.2d 1112, 1117 (7th Cir.1983)). That concept of when a claim "accrued" has been amplified in *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 450 (7th Cir.1990):

Accrual is the date on which the statute of limitations begins to run. It is not the date on which the wrong that injures the plaintiff occurs, but the date—often the same, but sometimes later—on which the plaintiff discovers that he has been injured. The rule that postpones the beginning of the limitations period from the date when the plaintiff is wronged to the date when he discovers he has been injured is the "discovery rule" of federal common law, which is read into statutes of limitations in federal-question cases (even when those

---

**4.** At least in surface terms, Pierre's just-outlined position on her breach of contract claim appears extraordinarily thin. But for the reasons stated in the last section of this opinion, this Court has found it inappropriate to engage in an in-depth analysis of that claim.

**5.** Because this opinion does not address the merits of that claim, this Court also eschews any comment as to the validity of the manner in which Pierre seeks to pile up that figure.

statutes of limitations are borrowed from state law) in the absence of a contrary directive from Congress.

Accord, such recent cases as *Cathedral of Joy Baptist Church v. Village of Hazel Crest*, 22 F.3d 713, 717 (7th Cir.1994); *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir.1994) (applying the principle in the copyright context).

Although Pierre unquestionably places the date of alleged infringement as October 12 or 13, 1988 (P.Mem. 11 says that "Defendant infringed her copyright ... during the first night of the workshop," and Pierre Dep. 337–40 makes that same assertion), she did not file this suit until May 21, 1993. Thus 4½ years elapsed between the accrual of her cause of action [6] and the instigation of this action, a conspicuously fatal delay in light of Section 507(b).

Pierre's Mem. 9 clearly recognizes her problem. And her only attempt to salvage the viability of her claim is this (Mem. 9–10):

> Even though the copyright infringement suit was filed four and one-half years after the said infringement, Pierre was unable to file suit beforehand since such action would have hindered her ability to get the information needed to complete the Survey. Nonetheless, her property should still be entitled to the protection afforded by the applicable statute.

It is hardly necessary to rehearse the principles that inform statutes of repose such as Section 507(b). But it may be worth repeating what the ultimate authority has said as to the policy considerations underlying such statutes (*United States v. Kubrick*, 444 U.S. 111, 117, 100 S.Ct. 352, 356–57, 62 L.Ed.2d 259 (1979) (citations omitted):

> Statutes of limitations, which "are found and approved in all systems of enlightened jurisprudence," represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that "the right to be free of stale claims in time

comes to prevail over the right to prosecute them." These enactments are statutes of repose; and although affording plaintiffs what the legislature deems a reasonable time to present their claims, they protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise.

Those principles are overridden only where a litigant can provide some sort of justification for tolling the limitations period, as the language quoted above from Pierre's memorandum apparently tries to do. Even though her counsel makes no effort to match her unsupported assertion to any established legal basis for such tolling, this opinion will briefly examine that subject.

■ First, it is readily apparent that neither of the common tolling doctrines—equitable tolling or equitable estoppel—is implicated here. Equitable tolling is obviously way off the mark (see the exposition of that doctrine in *Smith v. City of Chicago Heights*, 951 F.2d 834, 839–40 (7th Cir.1992)), and equitable estoppel is equally inapplicable. That latter concept comes into play when a defendant undertakes efforts that are calculated to prevent a plaintiff from suing in time, such as lulling the plaintiff by promising not to plead the statute of limitations (*id.* at 840–41).

About the closest rubric under which Pierre's contention might potentially fit—even arguably—is that of duress. And in that respect no decided case that this Court has been able to locate has involved a scenario that comes closer to this one than that presented in *Merchant v. Lymon*, 828 F.Supp. 1048, 1061 n. 12 (S.D.N.Y.1993) (discussing but not deciding "whether in any circumstance, duress may toll the copyright

---

**6.** Because she was in attendance at the workshop, Pierre does not purport to invoke the discovery rule to claim some later date of accrual (indeed, her Aff. ¶ 10 says that she confronted alleged infringer Dickson shortly after the inci-

dent). Nor does she identify anything other than the single instance of purported copyright infringement, so that she cannot claim continuing infringement (on that subject see, e.g., *Roley*, 19 F.3d at 481–82).

statute of limitations").[7]

But two factors doom Pierre's claim even in those terms. First, with the exception of a single district court case (which does not of course stand as precedent anywhere), "courts have universally rejected the theory that duress tolls the statute of limitations when, as here, duress is not an element of the underlying cause of action" (*Pahlavi v. Palandjian*, 809 F.2d 938, 942 (1st Cir.1987)). And second, nothing that Pierre has tendered would satisfy her need to ascribe some adverse action to INROADS. As *Pahlavi*, 809 F.2d at 942–43 has explained:

> It is not enough merely to allege in conclusory terms subjective fear that is unrelated to any actions or statements by the other party. Because the necessary allegations are conspicuously absent here, the district court was justified in rejecting [the defendant's] attempt to toll the limitation period by asserting that duress caused his failure to bring his claims in a timely fashion.

Accord, such cases as *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1056–57 (5th Cir.1982) and cases cited there; *Dok Sin Moses v. Phelps Dodge Corp.*, 818 F.Supp. 1287, 1289 (D.Ariz.1993); and *Jastrzebski v. City of New York*, 423 F.Supp. 669, 674 (D.C.N.Y.1976).

■ Here all that Pierre has proffered is her brief unsupported assertion that she feared INROADS might withhold survey data if she had brought suit. But even were that a basis for tolling (and it is clearly not under the just-cited authorities), and even if she had advanced facts in support of that position (as she clearly has not), she could not prevail on her unsupported theory. It appears that she is really thrice-doomed rather than twice-doomed, because it seems that her data collection was completed by the end of 1988, fully four years before this suit was brought (P.Ex. N, Pierre's INROADS Alumni Survey Status Report at I 1194, says "Data Collection terminated on December 30, 1988"). Such lingering tardiness in filing suit would provide an independent ground for rejecting any notion of tolling under such cases as *Hi–Lite Prod. Co. v. American Home Prod. Corp.*, 11 F.3d 1402, 1406–07 (7th Cir.1993) and *Merchant*, 828 F.Supp. at 1061. Pierre simply does not explain why she continued to sit on her rights *after* INROADS' ostensible ability to impede her collection of data had greatly diminished, if not evaporated entirely.

In sum, given the unquestionable running of the limitations period and the several independent bases that negate any tolling of the statute, Pierre's current effort to assert a copyright claim can only be described as frivolous. Count II is dismissed with prejudice.[8]

Indeed, were it not for the timing involved (INROADS first asserted limitations as an affirmative defense in early November 1993,[9] and it did not bring its Rule 56 motion until March 1994) and for the fact that most of the fangs were drawn from Rule 11 by its December 1, 1993 amendments, Pierre or her lawyer or both would plainly be a prime candidate or candidates for making IN-

---

**7.** It must however be said that it is an overstatement to characterize Pierre's argument, taken at its best, as coming even close to the *Merchant* example. Pierre's version does not begin to approach the contention that was made (albeit unsuccessfully) in *Merchant*: that plaintiffs there had failed to pursue their rights out of fear stemming from defendants' purported threats of violence and ties to organized crime (828 F.Supp. at 1061–62). As discussed a bit later, Pierre ascribes no threats or other action to INROADS, being forced to rely instead on what she contends went on in her own mind.

**8.** Considerations of judicial economy thus spare the need to address the substance of Pierre's copyright claim. But even a brief review of that claim suggests that it is substantively dubious in more than one respect.

**9.** Even though the statute of limitations bar had to be so evident to any lawyer (including Pierre's), it is after all a defense, rather than presenting a situation in which timely filing was an essential element of a copyright cause of action. That being so, perhaps a lawyer such as Pierre's may be entitled to bring such an obviously stale claim on the premise (however doubtful) that the defendant may not assert the defense. That need not be decided here. But it is worth noting that the 1993 amendments to Rule 11, requiring notice of the offensive conduct and giving the offender an opportunity to retreat without liability, tend to encourage such shabby conduct at the expense of a plainly non-liable defendant (see Rule 11(c)(1)(A)).

ROADS whole for the bulk of its litigation expense (see, e.g., *Johnson v. A.W. Chesterton Co.,* 18 F.3d 1362, 1364-66 (7th Cir. 1994)). This Court is disinclined to bring Rule 11's mechanisms into play to consider the imposition of nonmonetary sanctions on Pierre or her lawyer (an action that would most likely compel INROADS to send good money after bad by having to become involved in such proceedings)—it is enough that the publication of this opinion labels Pierre's counsel's effort for what it is.

### Breach of Contract Claim

Now that Pierre's copyright claim has dropped out of the picture, her breach of contract claim is no longer supplemental to any federal question claim.[10] In that situation the most common response has been to dismiss the state law claim or claims without prejudice—that is the seminal teaching of *United Mine Workers v. Gibbs,* 383 U.S. 715, 726-27, 86 S.Ct. 1130, 1139-40, 16 L.Ed.2d 218 (1966), repeated in a host of cases such as *Vukadinovich v. Board of School Trustees,* 978 F.2d 403, 414-15 (7th Cir.1992).[11]

■ *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 & n. 7, 108 S.Ct. 614, 619 & n. 7, 98 L.Ed.2d 720 (1988) has counseled that the *Gibbs* norm is not intended to be applied inflexibly. Instead several factors should be taken into account when deciding whether to maintain jurisdiction over a state claim when the federal jurisdictional predicate has proved empty.

■ Considerations of judicial economy obviously rank high on the list (*Gibbs,* 383 U.S. at 726-27, 86 S.Ct. at 1139-40). Pierre's Mem. 12 attempts to draw on such considerations by arguing:

> To transfer this matter to state court would cause unnecessary burdensome costs and delay prompt determination of

the issues. All discovery has been completed; the next step is trial. The trial court has been apprised, primarily through the Motion and responsive pleadings, of the disputed issues. Transfer to the state court, at this point, would result in "starting from scratch."

But her citation to the very different situation in *Salazar v. City of Chicago,* 940 F.2d 233, 243 (7th Cir.1991) does not help her here, where the state law claim is not really integrated with the now-disposed-of federal claim and where this Court must approach the claim for the first time. And as dubious as Pierre's contract claim appears to be (and as powerful as INROADS' opposition appears to be) on this Court's preliminary reading of the motion papers, the fact remains that resolution of the contract claim will require a totally fresh look by one court or another on purely state-law issues (*Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139, reaffirmed in *Carnegie–Mellon,* 484 U.S. at 350 n. 7, 108 S.Ct. at 619 n. 7). As for Pierre's stated concerns about cost and delay, she and her lawyer should have pondered those inconveniences *before* she brought her bootless copyright claim in federal court.

That factor leads to another highly relevant consideration, as articulated in *Province v. Cleveland Press Publishing Co.,* 787 F.2d 1047, 1055 n. 10 (6th Cir.1986):

> This [the *Gibbs* and post-*Gibbs* indications that trial courts do possess some discretion to decide a pendent state law claim once the federal basis for jurisdiction is dismissed] assumes that the federal claim was originally substantial enough to confer federal jurisdiction. If, however, a federal claim is dismissed as being frivolous or patently meritless, then subject matter jurisdiction was never appropriate, and the

**10.** Until 1989 the facts that Pierre is a Canadian citizen (Complaint ¶ 3) and that both bases of INROADS' dual citizenship under 28 U.S.C. § 1332(c)(1) are in Illinois (Complaint ¶ 4) would have given this Court independent subject matter jurisdiction on diversity-of-citizenship grounds (certainly more than $50,000 is in controversy). But the amendment to 28 U.S.C. § 1332(a) that makes alien Pierre an Illinois "citizen" for diversity purposes because she also resides here

(Complaint ¶ 3) has destroyed that potential for diversity jurisdiction.

**11.** *Brazinski v. Amoco Petroleum Additives Co.,* 6 F.3d 1176, 1182 (7th Cir.1993) has confirmed that this principle of what had formerly been referred to as pendent jurisdiction is not altered by the supplemental jurisdiction statute, 28 U.S.C. § 1367.

pendent state claims *must* be dismissed without prejudice.

In that respect *Province* followed the Second Circuit's lead in *Dunton v. County of Suffolk,* 729 F.2d 903, 910–11 (2d Cir.1984), which was based in turn on the pronouncement in *Gibbs,* 383 U.S. at 725 and 727, 86 S.Ct. at 1138 and 1139 (1) that what was then pendent jurisdiction can be invoked only when federal claims are substantial and (2) that the substantiality issue "remains open throughout the litigation."

That principle clearly dictates the proper path here—and well it should. It is all too plain that Pierre has sought to exploit the supplemental jurisdiction statute to bootstrap a contract claim into federal court via a frivolous copyright claim, even though the complex *fact-intensive contract dispute is better* suited for the "surer-footed reading of applicable law" available in state court (*Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139).

As was true of Pierre's copyright claim, more than one basis thus exists for dismissal of her breach of contract claim (though this time without prejudice). One perspective would commit that decision to this Court's sound discretion (see, e.g., *Vukadinovich,* 978 F.2d at 415), while the other perspective would command this Court's decision (under the *Province–Dunton* mandate). Either way Pierre loses.

### Conclusion

As to Pierre's copyright claim, there is no genuine issue of material fact and INROADS is entitled to a judgment as a matter of law. Hence Complaint Count I is dismissed with prejudice. Pierre's breach of contract claim (Complaint Count II) is dismissed without prejudice.